HUME *et al. v.* INGLIS *et al.*

(Division B. June 3, 1929.)

[122 So. 535. No. 27925.]

482

484

*James F. Galloway* and *Ross & Backstrom,* all of Gulf-port, for appellants.

*R. C. Cowan* and *J. L. Taylor,* both of Gulfport, for appellees.

Argued orally by *J. F. Galloway* and *Oscar Backstrom*, for appellant, and by *J. L. Taylor*, for appellee.

GRIFFITH, J., delivered the opinion of the court.

The bill of complaint in this case is drawn in three aspects: A bill to reform certain deeds of conveyance, to cancel clouds on title, and to confirm title. There was a final decree in which the bill was sustained in all its said three aspects. However, it is distinctly alleged in the bill, and is shown in the proof, that the land in question.is in the actual occupancy of one of the defendants, and that this defendant is asserting some claim of right adverse to the complainant.

A bill to confirm title can be maintained as such only when there is no adverse occupancy of the land. Section 549, Code of 1906 (section 321, Hemingway's 1927 Code). When the land is adversely occupied, as is the case here, the most that such a bill can be—but it may be that much —is one to cancel clouds, under which latter bill only named defendants can be made parties. It is not allowable under a bill to cancel clouds and, when there is adverse occupancy, to make unknown parties defendants, as may be done in a general bill to confirm. There was, therefore, no jurisdiction in this case of unknown defendants, and that portion of the decree attempting to adjudicate the title as against unknown parties is void, and must be reversed finally and vacated.

In its aspect as a bill to reform deeds, one of the necessary defendants is H. E. Capdau. There was no separate affidavit of nonresidence, and the only allegation in the sworn bill respecting the residence of said Capdau is the following contained in the opening paragraph of the

bill wherein the several defendants are named: "H. E. Capdau, whose post-office address is 2406 Eighth Street, New Orleans, Louisiana." It is not alleged anywhere in the bill that Capdau is a nonresident of this state, and, while there may be an inference from the allegation aforesaid that he is a resident of Louisiana, that inference does not necessarily or conclusively follow. There may be many people who live in this state and are subject to personal summons whose sole post office addresses are neighboring points in other states. Inferences are not sufficient to uphold a process by publication; nothing less than positive averment of the facts, or the full equivalent thereof, will suffice. In order to satisfy the requirements of due process, all the terms of the statute respecting summons by publication must be strictly pursued. *McCray* v. *McCray,* 137 Miss. 160, 102 So. 174, and cases therein cited. The exact question we have before us in this particular was presented and decided adversely to appellees in *Mays Food Products, Inc.,* v. *Gloster Lumber Co.,* 137 Miss. 691, 102 So. 735. The only process to the defendant Capdau was a summons by publication. He failed to appear, and hence the decree as to him is void for want of jurisdiction, and must be reversed.

There are further and important questions presented by the pleadings and by such parts of the evidence as are contained in the record, and noting that, extending back through a series of years, there has been much litigation over this property, it would be agreeable to our sense of duty if we could now go forward and dispose of all the several questions involved. But, as to the remaining questions, we are at once confronted with the fact that a copy of the plat or map of the partition made in 1837 between Henderson and Shipman and Hughes is omitted from the record. The opinion of the chancellor shows that this map or plat was the ground work, or formed the chief basis upon which he arrived at his controlling conclusions. Our examination of the record,

such as is here, discloses that this plat is indispensably essential to our review of these conclusions.

The purpose of the record in an appellate court is to place before that court an exact reproduction, insofar as physically possible, of the material pleadings, proceedings, and evidence in the trial court, so that from the first or initial pleading, thence to and including the last judgment or decree made in the trial court, there may be officially exhibited to the appellate court everything, material to the appeal, that was before the court in the trial and which was considered and done, or which should have been considered and done by that court. "It is what the trial court acts upon and what it does or refuses to do, that creates the elements out of which the record is constructed." Elliot's App. Proc., section 190.

When a record has been duly certified to this court by the clerk of the trial court, and no suggestion of diminution is made by either party, and there is nothing in the record as so certified which definitely indicates that something material is omitted, the appellate court acts upon the absolute presumption that the record is correct and is complete. But, when an examination of the record is made by the court, and this examination discloses, without question, that a material and indispensable part of that upon which the trial court has acted is missing, there are but three courses open to us: First, if it appears from the record that there is vital error in the proceedings, regardless of, and whatever may have been shown by, the portions so indicated as missing, then reversal will, of course, follow; but in the second and third places, the options are either to affirm the case upon the principle that the judgment or decree of the trial court is presumed to be correct, and that the matters which are missing from the record were of such character as to supply the material necessary to support the judgment or decree (*Bunckley* v. *Jones,* 79 Miss. at pages 6, 7, 29

So. 1000), or else to reverse, that a complete record may be made up and placed before us by way of another trial, which latter course can be taken only in an unusually exceptional case.

The parts of records which are the more frequently missing are maps and diagrams, and often this omission makes the record on the facts practically unintelligible. Of such a case, it was said by Judge WHITFIELD in *Illinois Cent. R. R. Co.* v. *Jones* (Miss.), 16 So. 300: "We must once more pointedly condemn the manner in which the bill of exceptions describes the injury as having occurred. A diagram made the matter clear to the jury, but there is no diagram in this record, and the remarks made in *Railroad Co.* v. *Miller,* 68 Miss. 762, 10 So. 61, on this point, are here reiterated." In the Miller·case cited by him the map used was made a part of the record, but the evidence of the witnesses in connection with the map was taken by pointing out on the map, and the manner in which the witnesses pointed out before the jury was not shown in the record. In the recent case *Planters' Package Co.* v. *Parsons* [Miss.], 120 So. 200, the same defect as that last mentioned existed in the record, in addition to which the diagram itself was missing. In that case, we said that, when records are so presented, we would have to reserve the right to affirm without review on the facts. When testimony is taken in connection with a map or diagram, the questions and answers must be so shaped, if any appeal is contemplated as probable, that, by reading them in connection with the map or diagram, we can understand exactly what the testimony is, and, of course, a true copy of the map or diagram must be sent up with the record, else it is not a complete record, thereby bringing into operation the stated options in respect to affirmance.

We call attention to the further fact that the plat of the, Pellerin grant as finally surveyed and approved is also missing, and, while this is a public plat of which

we can take judicial notice, we would, as a practical matter, be compelled to go to the archives of the land office to find it, whereas the record should be complete to the extent that the whole case can be fully and accurately examined from the transcript itself. Inasmuch as the case must, for the two reasons first mentioned, be reversed, we have added the foregoing observations for the benefit of the record in event the case should return to this court, as well as for the benefit of the records in other cases that will come.

*Reversed and remanded.*