RICE et al. *v.* McMULLEN.

In Banc. Nov. 28, 1949

No. 37226 (43 So. (2d) 195)

**Breland & Whitten,** for appellants.

**Roberson, Luckett, & Roberson,** for appellee.

**Roberson, Luckett, & Roberson,** for appellee and cross-appellant.

716

Breland & Whitten, for cross-appellees.

**Montgomery, J.**

The appellee, Nathan J. McMullen, a residuary legatee under the will of P. H. McCalep, brought this suit in the Chancery Court of the Second Judicial District of Tallahatchie County to recover from the estate of Mrs. Carrie McCalep Armstrong, a sister of P. H. McCalep, deceased, his alleged rightful share of the residuum of the trust estate created by the last will and testament of P. H. McCalep, the corpus of which trust estate, it is alleged,

had been wrongfully appropriated by Mrs. Armstrong, as the sole heir at law of P. H. McCalep, deceased, on the strength of a void decree rendered by the trial court theretofore on April 23, 1939, whereby it was decreed that the alleged will was not the true last will and testament of P. H. McCalep, deceased, and adjudging Mrs. Armstrong to be his sole heir at law and as such entitled to receive the estate. There was a decree in the lower court for appellee for the sum of $3,984.33 and from this decree the executors appeal and the appellee cross-appeals.

For a full understanding of the case presented here for decision it is necessary that we briefly review the facts.

On February 10, 1939, P. H. McCalep executed his last will and testament, Items 4, 5, and 10 of which are material in our discussion here and which items read as follows:

"IV. It is my desire that my sole, surviving close relative, to-wit: my sister, Carrie McCalep Armstrong, shall be provided for during her life. I, therefore, constitute and appoint the said M. P. Sturdivant and the said J. R. Flautt, my trustees, to take charge of, to manage, and to invest all property of which I shall die, seized and possessed, to hold, manage and to invest the same and out of the proceeds to pay to my said sister each a sum and amount equal to $200.00 per month, there being charged against the said $200.00 a month, the amount per month which my sister shall receive from any annuity policies which I have procured, payable to her; she, however, to receive in addition to the $200.00 per month, the proceeds of any policies other than annuity policies in which she is beneficiary, which sum or sums so received shall not be considered or computed as payments on the $200.00 per month allowance herein provided for.

"V. In the event of illness or other emergency, which in the judgment of my said trustees and executors, shall justify the expenditure, they are authorized in addition to the $200.00 a month, to expend additional sum out

of either income or principal in whatever amount may be necessary for the proper care of my said sister.''

''X. After my said sister shall die, the property in the hands of said trustees shall be divided equally between Mrs. Alice McMullen, Mrs. Nita Seawright Campbell, Mrs. Katie Seawright Crowe, Nathan McMullen, Francher McMullen Provine, share and share alike.''

P. H. McCalep died on February 16, 1939, just six days after the execution of the will. On February 21, 1939, it was offered for probate in common form and by order of the Chancery Clerk was duly admitted to probate and record. On March 21, 1939, Mrs. Carrie McCalep Armstrong filed a contest of the will on the grounds that it was not lawfully executed by the testator and that the testator did not have, at the time of its alleged execution, the necessary testamentary capacity to enable him to make a will. All of the legatees, who were to take under the will, were made parties. The appellee, Nathan J. McMullen was alleged in the petition to be a non-resident in the following language, ''Nathan J. McMullen, whose place of residence and postoffice address is Sherman, Texas, but whose street address is unknown to respondent and could not be ascertained after diligent inquiry''. There was no separate affidavit and the foregoing was the sole allegation in support of the process by publication for appellee, Nathan J. McMullen. Thereafter all of the parties defendant, except the appellee, employed attorneys to represent them in resisting the effort of Mrs. Armstrong to have the will declared null and void and the proposed contract of employment of said attorneys was sent to Nathan J. McMullen at his home in Sherman, Texas, but was returned by him without signature. Appellee stated to the other residuary legatees that he did not want to be involved in a lawsuit with Mrs. Armstrong. He also acknowledged that he received from the clerk a copy of the published summons and that he

received a copy of the instrument purporting to be the will of P. H. McCalep.

Before the trial of the will contest a settlement was agreed upon, by all of the defendants, except Nathan J. McMullen, as a result of which $16,500.00 was paid over to the other legatees, excepting Nathan J. McMullen, and those legatees agreed not to contest Mrs. Armstrong's action to set aside the will and to permit her, without contest, to take the decree desired by her. This agreement was carried out and although the decree rendered pursuant to Mrs. Armstrong's action appears by its terms to have been granted by the court after a contest of the issues involved in the action, there was, in fact, no such contest and the same was obtained by Mrs. Armstrong with the consent of all of the legatees under the will of P. H. McCalep, deceased, excepting Nathan J. McMullen, who did not consent and received nothing from the settlement of the lawsuit. On April 23rd, 1939, the court, under the circumstances above stated entered a decree setting aside the alleged will of P. H. McCalep, deceased, adjudging Mrs. Armstrong to be the sole heir at law of the deceased, and directing payment of the assets of the estate over to her as such.

From the date of this decree Mrs. Armstrong was in full possession and control of the assets of the estate of P. H. McCalep, deceased, mixing and commingling them with her own and enjoying them as her pleasures or necessities might require until her death on February 17, 1945.

Thereupon, the date of the filing not appearing in this record, the appellee, Nathan J. McMullen, filed his original bill against the appellants, who had been appointed executors upon the estate of Carrie McCalep Armstrong, deceased, and to this an amended bill was filed, the filing date not being shown in the record, and a second amended bill was filed on February 5, 1947. To these there were full answers by the defendants.

The pleadings admit that on the faith of the decree of April 23, 1940, and pursuant to the further orders of the court, M. P. Sturdivant and J. R. Flautt, the executors of the estate of P. H. McCalep, after paying all of P. H. McCalep's just debts, including those incurred in his last illness and those owed to his physicians and those probated against his estate; and after converting all of P. H. McCalep's real estate and personal property into cash, with the exception of a promissory note due by J. R. Flautt to P. H. McCalep in the amount of $4500.00, a $5,000.00 certificate of deposit with the Bank of Sumner, and a $7,988.32 savings account with the Bank of Clarksdale, and after paying the legacy provided by P. H. McCalep for Sarah Faulkner; and after paying all costs of administration, including Clerk's costs, executors' fees and attorney's fees and after paying all taxes due by the estate, delivered all of the remaining assets of the estate of P. H. McCalep to the said Mrs. Armstrong. Those assets consisted of $16,500.00 in cash, a $5,000.00 certificate of deposit in Bank of Sumner, a $7,988.32 savings account deposit in Bank of Clarksdale and promissory note of J. R. Flautt on which there remained unpaid the sum of $4,500.00. Mrs. Armstrong thereafter collected said sums from said banks and said note from said Flautt, said gross assets amounting to a total sum of $33,988.32, The pleadings further admit that out of this sum Mrs. Armstrong paid the legacies provided for Nita Seawright Campbell, Katie Seawright Crowe, Nathan James Boatner and Patrick Wilson Flautt—amounting to a total of $2,500.00, thus leaving the net estate available to Mrs. Armstrong in the sum of $31,488. 32.

The pleadings further admit that P. H. McCalep procured, prior to the execution of his last will, two annuity policies, under one of which the insurance company paid to Mrs. Armstrong seventy-two monthly installments of $63.89 each from February 27, 1939, to January 27, 1945, inclusive—a total of $4,600.08, and under the other policy

the insurance company paid to Mrs. Armstrong $766.80 on May 24th of the years 1939 through 1944, inclusive, and that her estate collected a like sum on May 24, 1945—the total of these annual payments, together with the proportionate part of the last payment aggregating the sum of $5,233.23 or a grand total received by Mrs. Armstrong on both policies in the sum of $9,833.31.

The pleadings framed the following issues: (1) Was the decree of April 23, 1939, setting aside the will of P. H. McCalep, adjudicating Mrs. Armstrong to be the sole heir at law of P. H. McCalep, deceased, and directing the payment over to her of the assets of the estate as such, binding on appellee Nathan J. McMullen? (2) Was the alleged instrument of writing the true last will and testament of P. H. McCalep? (3) Was Nathan McMullen estopped to assert the invalidity of the aforesaid decree of April 23, 1939, and (4) was Nathan McMullen guilty of such laches as would bar his right of recovery?

By stipulation of counsel it was among other things agreed that the decree of the clerk admitting the will of P. H. McCalep, deceased, to probate in common form was not thereafter approved by the Chancellor of said court and that Mrs. Armstrong was never completely well and that she expended for hospital bills, doctor bills, medicines and for nurses a sum between $6,000.00 and $8,000.00 between the date of the death of P. H. McCalep and her own death and that the money so expended was necessary for her proper care.

The learned court below found that the decree of April 23rd, 1939 was not binding upon Nathan J. McMullen because of void service of process upon him; that the alleged will was the true last will and testament of P. H. McCalep, deceased; that Nathan J. McMullen was not estopped to assert the invalidity of the decree of April 23rd, 1939; that he was not barred by laches and that he was entitled to recover from the estate of Mrs. Armstrong, under the provisions of item 10 of the will of P. H. Mc-

Calep, deceased, the sum of $3,984.33, which amount was arrived at as follows: Mrs. Armstrong lived 72 months after the death of P. H. McCalep and was entitled, under the will to receive 72 monthly payments of $200.00 each—totaling the sum of $14,400.00. She received from the annuity policies a total of $9,833.31, which when deducted from the $14,400.00 leaves $4,566.69 which she was entitled to receive out of the McCalep estate. Take $31,488.22 which was the net of the McCalep estate, and deduct from it this $4,566.69, which Mrs. Armstrong was entitled to receive from the estate for her care, and this leaves $26,921.63. The Court then found that under item 5 of the will and the stipulation of counsel it was necessary for Mrs. Armstrong to expend for her care, in addition to the $200.00 per month allowed under Item 4 of the will, the sum of $7,000.00, which when deducted from the $26,921.63 balance above mentioned, leaves the sum of $19,921.63, which represents the net residue of the estate of P. H. McCalep that passed under item 10 of the will to the residuary legatees. Under said item of the will Nathan J. McMullen was entitled to a one-fifth part thereof or the sum of $3,984.33 for which a decree was rendered in his favor.

It is first assigned as error, here on the direct appeal, that the decree of the lower court is contrary to the law and the evidence and that the lower court erred in holding that the decree of April 23rd, 1939, setting aside the will of P. H. McCalep was null and void insofar as it affected the rights of Nathan McMullen. We are of the opinion the lower court was correct in so holding.

Section 1852, Code of 1942, reads as follows:

"If the defendant in any proceeding in a chancery court be shown by sworn bill or petition, or by affidavit filed, to be a non-resident of this state, or not to be found therein on diligent inquiry and the post office of such defendant be stated in the bill, petition or affidavit, or if it be therein stated that it is not known to the complain-

ant or petitioner after diligent inquiry, or if the affidavit be made by another for him, that such post office is unknown to affiant after diligent inquiry and he believes it is unknown to complainant or petitioner after diligent inquiry by complainant or petitioner, the clerk, upon the filing of the bill or petition, account or other commencement of a proceeding, shall promptly prepare and publish a summons to such party to appear and defend the suit, on a rule day in vacation sufficiently distant in time to admit of the due publication thereof, or on the first day of the next regular term if thereby the answer of the defendant would be the earlier required. The summons shall be substantially in the following form, to-wit:

" 'The State of Mississippi.

" 'To . . . . . (inserting name of defendant). You are summoned to appear before the chancery court of the county of . . . . . in said state, on the . . . . . Monday of . . . . . A. D. . . . . . . to defend suit No. . . in said court of . . . . . (et al.) wherein you are a defendant.

" 'This . . . . . . . . . . . . . day of . . . . . . . . . . . . . A. D. " ' . . . . . . . . . . . . Clerk.'

"The publication of said summons shall be made once in each week during three successive weeks in a public newspaper of the county in which the court is held if there be one, and where there is no newspaper in the county the notice shall be posted at the courthouse door of the county and published as above provided in a public newspaper in an adjoining county or at the seat of government of the state, and the period of said publication shall be deemed completed at the end of twenty-one days from the date of the first publication, provided there have been three publications made as hereinabove required; and upon proof of the prescribed publication of such summons and of the mailing of a copy of the summons to the defendant at his post office where that is stated,

the defendant may be thereupon proceeded against as if he had been served personally for five days previously to the date of the completion of said publication, with a summons in the case in this state. Where the post office address of a defendant is given the street address, if any, shall also be stated unless the bill, petition, or affidavit above mentioned, aver that after diligent search and inquiry said street address cannot be ascertained.''

It will be noted that under this statute it is expressly made a condition precedent to the issuance of process by publication that ''the defendant . . . be shown. . , to be a non-resident of this state, or not to be found therein on diligent inquiry . . .'' Mrs. Armstrong did not fulfill this condition. She simply named as defendant: ''Nathan McMullen, whose place of residence and post office address is Sherman, Texas, but whose street address is unknown to respondent and could not be ascertained after diligent inquiry . .''. She did not state in her pleading that Nathan McMullen was a non-resident of this state, or not to be found therein on diligent inquiry.

There is no ambiguity as to how a non-resident shall be brought into court. In substance the statute simply provides that, in order to bring in a non-resident defendant, the complainant as his first step must either in his sworn bill or petition or separate affidavit make oath that the defendant is a non-resident of this state or not to be found therein on diligent inquiry, and the post office address of such defendant if known, and, if not known after diligent search and inquiry, so stating; and if the post office address is known then by giving the street address if known and if not known, after diligent search and inquiry, so stating. This statute is jurisdictional. It is one of the methods provided by law to meet the requirements of the due process clause of the Constitution. Burns v. Burns, 133 Miss. 485, 97 So. 814. This Court has repeatedly held that constructive serv-

ice of process under this statute by publication is insufficient to support a decree, unless the requirements of the statute are strictly pursued. Burns v. Burns, supra; Ponder v. Martin, 119 Miss. 156, 80 So. 388; Id., Miss., 78 So. 929; Moore v. Summerville, 80 Miss. 323, 31 So. 793, 32 So. 294; Diggs v. Ingersoll, Miss., 28 So. 825; McCray v. McCray, 137 Miss. 160, 102 So. 174; Mays Food Products, Inc., v. Gloster Lumber Co., 137 Miss. 691, 102 So. 735; Hume v. Inglis, 154 Miss. 481, 122 So. 535; Mercantile Acceptance Corp. v. Hedgepeth, 147 Miss. 717, 112 So. 872; Sellers v. Powell, 168 Miss. 682, 152 So. 492; Cratin v. Cratin, 178 Miss. 881, 173 So. 415, 174 So. 255.

 It is argued that to state in the bill that the place of residence and post office address of the defendant is Sherman, Texas, is to state the inescapable inference that the defendant is a non-resident of Mississippi but inferences are not sufficient to uphold a process by publication and nothing short of a positive averment of the facts will suffice. Hume v. Inglis, 154 Miss. 481, 122 So. 535. The sworn bill in the case before us was defective in that it did not state that Nathan J. McMullen was a non-resident of the State of Mississippi, and the attempted service of process upon him by publication was null and void. Paepcke-Leicht Lumber Co. v. Savage, 137 Miss. 11, 101 So. 709; Sellers v. Powell, 168 Miss. 682, 152 So. 492; McCoy et al. v. Watson, 154 Miss. 307, 122 So. 368, and many other cases.

It is further assigned as error and argued by appellant that even though the process by publication for Nathan J. McMullen was void still he is estopped from attacking the validity of the decree of April 23, 1939, because he knew of the death of P. H. McCalep and that he left a will in which he, Nathan J. McMullen, had been named as one of the residuary legatees; he had seen a copy of the will; he knew that Mrs. Armstrong had filed a contest of the will and was endeavoring to set it aside; he knew

that his co-defendants had employed lawyers to uphold the will; and he knew that they were endeavoring to get him to join them in the defense of the suit. Did these acts estop the appellee from attacking the validity of the decree setting aside the P. H. McCalep will? We think not.

Griffith's Mississippi Chancery Practice, Section 223, page 221, states the rule as follows:

██ "It is a cardinal principle in the administration of justice that no man can be condemned, or divested of his rights, until he has had an opportunity of being heard. He must, by service of process, by publication of notice or in some equivalent way, be brought into court, and if judgment be rendered against him before that is done, the proceedings will be as utterly void as though the court had undertaken to act where the subject matter was not within its cognizance. The principle is universal that no judgment, order or decree is valid or binding upon a party who has had no notice of the proceeding against him. The court must not only have jurisdiction of the subject matter, but also of the persons of the parties to give validity to its final judgments, orders and decrees, and it is not in the power of the legislature, under our constitution, to dispense with this notice, actual or constructive."

21 C. J. S., Courts, Sec. 83, page 124, announces the rule as follows:

". . . it is held that a person's knowledge of the existence of an action does not supply the want of compliance with the statutory or legal requirements as to service, and that a person's mere presence in court does not give jurisdiction to enter a judgment against him when he was not brought there by any legal means."

This contention by appellant has been forever set at rest in this state by the decision in McCoy et al. v. Watson, 154 Miss. 307, 122 So. 368, 370, wherein it was said:

"Finally, it is argued that since the filing of the peti-
tion to remove shows conclusively that the nonresident
defendant knows all about the suit, and has all the actual
knowledge that could be conferred by a legal summons,
we should not require the ceremony of a legal notifica-
tion; that it would be an idle thing to do. Upon the
same reasoning it could be maintained that the affidavit
of the sheriff and witnesses could be received to show
that, although the sheriff had not served the defendant
with a formal legal summons, he had told the defendant
orally in the presence of these witnesses all about the
suit and warned him to appear and when to appear, and
that the defendant had gone to the courthouse and read
all the papers in the case and had obtained certified
copies of the case papers and knew everything about the
case that he could have learned from a legal summons.
It is now so thoroughly well settled as to make it too late
to urge that ██ knowledge by a defendant of a suit,
however definite and full, or however obtained, or what-
ever may have been the defendant's action under that
knowledge, is of any avail or advances the case a step,
unless there has been a legal summons or a legal appear-
ance. McPike v. Wells, 54 Miss. 136; Jacks v. Bridewell,
51 Miss. 881; Burns v. Burns, 133 Miss. 485, 97 So. 814."

██ It is not claimed that appellee ever committed
any act or spoke any word amounting to any representa-
tion to Mrs. Armstrong or to a concealment of any fact
from her or that he remained silent with the expectation
or intention that Mrs. Armstrong would rely on his
silence. It is not even intimated in this record that Mrs.
Armstrong's position was changed for the worse by
reason of appellant's conduct, nor was the appellee
under any duty to speak. We do not have here a case
wherein the appellee was under any duty to speak, knew
facts not known to his opponent but remained silent with
intent to mislead the other, and did by his silence mislead
the other. Hence Staton v. Bryant, 55 Miss. 261; Roberts

v. Bookout, 162 Miss. 676, 139 So. 175; Lucas v. New Hebron Bank, 181 Miss. 762, 180 So. 611; and Sample v. Romine, 193 Miss. 706, 8 So. (2d) 257, 9 So. (2d) 643, 10 So. (2d) 346, relied on by appellant, have no application here. There is no element of estoppel in this case, and the lower court was correct in so holding.

■ ■ Neither was the appellee guilty of laches. Under item ten of the will appellee was to receive on Mrs. Armstrong's death a one-fifth part only of the property then remaining in the hands of the trustees under the P. H. McCalep will. He had no right to anything until Mrs. Armstrong died. Her needs were to be taken out of the income or principal of the estate under items 4 and 5 of the will, and the entire estate, within the discretion of the trustees, could have been expended in the event of illness or emergency overtaking Mrs. Armstrong. Appellee had no right to demand anything of the trustees until Mrs. Armstrong died, and then to demand only one-fifth of the residue remaining in the hands of the trustees. There is no element of laches here, and the lower court was correct in so holding.

It is further contended by appellant that the lower court erred in holding that the alleged will was the true last will and testament of the deceased, P. H. McCalep, and that it was legally admitted to probate in common form.

■ ■ The will was admitted to probate in common form by the decree of the chancery clerk in vacation, and this vacation order was never approved by the chancellor or by the court in term time, as provided by Sections 1253 and 1254 of the 1942 Code. It is the established law of this State that the probate of the will in common form before the clerk in vacation is prima facie evidence of the validity of the will until the will is declared invalid and set aside by a proper and lawful proceeding in a proper court, having jurisdiction of the subject matter

and of the parties in interest. Bigleben v. Henry, 196 Miss. 586, 17 So. (2d) 602.

On the hearing in this cause, appellee introduced in evidence the proceedings before the clerk in vacation admitting the will to probate in common form. This made out a prima facie case of the validity of the will. O'Bannon v. Henrich, 191 Miss. 815, 4 So. (2d) 208. Section 507, Code of 1942. The only evidence for appellant was the testimony of Will A. McMullen that the signature to the instrument was not the signature of the testator, but on further examination he made it clear that he did not mean to say that someone else signed the testator's name to the will, but that it appeared to him, from the fact that the signature was larger than the testator's usual signature, that someone assisted the testator in the making of testator's signature. This was not sufficient to overcome the prima facie case. The court was consequently correct in holding that the alleged will was the true last will and testament of P. H. McCalep, deceased.

Lastly it is urged by appellants that the lower court erred in holding that appellants have in their hands as executors of the estate of Mrs. Armstrong, deceased, funds derived from the estate of P. H. McCalep, deceased.

In the stipulation by counsel, it was agreed that the separate estate of Mrs. Armstrong just prior to the payment to her by the executors of the estate of P. H. McCalep of monies belonging to the estate of P. H. McCalep was in excess of the amount of her estate at the time of her death, and that no records are available to show the manner in which Mrs. Armstrong disbursed or used the monies paid to her by the executors of the estate of P. H. McCalep, other than the manner in which she disbursed the $16,500.00, as mentioned in paragraph one of the stipulation.

It is well established that the rights of a beneficiary of a trust estate who finds the trust property has been wrongfully transferred to a third party with notice of the trust are clearly defined in law, and are without dispute so far as we know. Such a beneficiary has the right to follow the trust property and to recover the res if he can identify it in the hands of the third party, or he can have judgment against the third party for the value of the trust property. Scott on Trusts, Sections 291.2, 291.7; Bogert on Trusts, and Trustees Section 867.

Since it is agreed in the stipulation of counsel that no such identification or tracing is possible in this case, it follows that appellee is entitled to a money judgment for the value of his interest in the trust property.

On the cross-appeal by appellee, it is urged that the court below erred in deducting from the residue of the estate of P. H. McCalep that was paid over to Mrs. Armstrong the sum of $7,000.00 that was expended by her for necessary doctor's and hospital bills and nurses' hire and medicine, though agreed to be necessary for her care.

It is argued by appellee that the power conferred upon the trustees under item 5 of the will was a personal power, and its exercise was dependent upon their personal judgment, whether the additional allowance should be made or not, and that the power was a special trust or confidence reposed in their judgment alone and could not be exercised by anyone else and since the trustees were discharged and the money was paid over to Mrs. Armstrong, the trustees have never acted and the court now is powerless to make the allowance, relying on Montgomery v. Millikin, 5 Smedes & M. 151; 43 Am. Dec. 507; Bartlett v. Sutherland, 24 Miss. 395; Whitfield v. Thompson, 85 Miss. 749, 38 So. 113; Chandler v. Chandler, 111 Miss. 525, 71 So. 811; and Virginia Trust Company et al. v. Buford et al., 123 Miss. 572, 86 So. 356, 516.

But, appellee admits in his brief. "We do not intend to maintain that the discretion vested by the settlor and his executors and trustees was beyond the control of the courts. We know that if such discretion had been arbitrarily abused by the executors and trustees the trial court could have given relief to the one or ones injured thereby. Yeates v. Box, 198 Miss. 602, 22 So. (2d) 411; Reedy et al. v. Johnson's Estate, 200 Miss. 205, 26 So. (2d) 685.''

In the construction of wills, the court is alone concerned with the intention of the testator, and looks to the four corners of the will to ascertain that intention, not from what he might have intended to say but from what he actually said in the words used in his will. Yeates v. Box, 198 Miss. 602, 22 So. (2d) 411; Ball v. Phelan, 94 Miss. 293, 49 So. 956, 23 L. R. A., N. S. 895. With this rule in mind, we look to the will, and from the language used in item 4 thereof: "It is my desire that . . . my sister, Carrie McCalep Armstrong shall be provided for during her life''; and from the language used in item 5 of the will authorizing the trustees: "to expend additional sum out of other income or principal in whatever amount necessary for the proper care of my said sister''; we determine that it was the intention of the testator that his said sister be cared for and that such of his estate, either income or principal as was necessary for this purpose, the testator desired and intended that it be so used and expended even though it consumed his entire estate. That such expenditure, to the extent of $7,000.00 of the corpus of the estate, was necessary, has been agreed upon in the stipulation of counsel. If the will had not been set aside and the trustees had administered their trust, it would have been their duty to so expend this $7,000.00, and had they refused or neglected to do so, the court could have and would have compelled the allowance. Scott on Trusts, Sections 187.3 and 187.1; Colton v. Colton, 127 U. S. 300;

8 S. Ct. 1164, 32 L. Ed. 138. The deduction of the $7,000.00 from the net estate of P. H. McCalep paid over to Mrs. Armstrong was a proper deduction.

Hence, we find no error in the decree of the lower court, and it is affirmed on both the direct and the cross-appeal.

Affirmed.

**Roberds, J.** (concurring).

Except that the decided cases appear to hold otherwise, and I am bound by them unless and until they are overruled, I would be compelled to conclude that the affidavit in this case states that McMullen, at the time of the former contest of the will, was a non-resident of Mississippi. It borders on the absurd, in my judgment, to say an affidavit does not say a party is a non-resident of this State when it does state the party is a resident of Sherman, Texas, and that Sherman is his post office address. That is the same as concluding that an affidavit fails to state the party is a non-resident of Mississippi, although it says he is a resident of London, England, and his postoffice address is No. 10 Downing Street. He could not be a resident of both places at one and the same time for the purpose of service of process.