925 So.2d 859 (2005)
LEXINGTON INSURANCE COMPANY, Appellant
v.
Charles BUCKLEY, Appellee.
Lexington Insurance Company, Appellant
v.
Charles Buckley, Appellee.
Nos. 2003-CA-01249-COA, 2003-CA-02183-COA.
Court of Appeals of Mississippi.
September 6, 2005.
Rehearing Denied February 7, 2006.
Certiorari Denied April 6, 2006.
*860 Lawrence Cary Gunn, Hattiesburg, Louis B. Lanoux, Jackson, attorneys for appellant.
Samuel Steven McHard, David Shoemake, attorneys for appellee.
Before BRIDGES, P.J., GRIFFIS and BARNES, JJ.
BRIDGES, P.J., for the Court.

I.

BACKGROUND
¶ 1. Charles Buckley witnessed a tragic accident and filed emotional distress and *861 negligence claims against Allied Products. Because Allied had purchased a liability insurance policy from Lexington Insurance Company, Buckley and Lexington attempted to negotiate a settlement. Lexington offered to pay Buckley $140,000 to settle the claim, and Buckley accepted the offer with the added provision that Lexington pay the settlement funds within ten days of their agreement. When Lexington did not tender settlement funds, Buckley filed a complaint for specific performance in the Covington County Chancery Court. Lexington did not respond to the suit and Buckley obtained a judgment against Lexington.
¶ 2. When Lexington discovered the judgment, Lexington filed a motion to extend time for an appeal. The chancellor granted Lexington's motion and Lexington's appeal of the judgment comprises one of the present consolidated appeals.
¶ 3. After Lexington filed its successful motion for extension of time, Lexington filed a motion to set aside the judgment. Buckley also filed a motion to reconsider granting Lexington's motion for extension of time. The chancellor addressed both motions in one hearing and denied both. Lexington also appeals the chancellor's denial of its motion to set aside the judgment. That appeal is the second of the present consolidated appeals.
¶ 4. Aggrieved by the two decisions mentioned above, Lexington argues: (1) that the chancery court lacked personal jurisdiction over Lexington due to insufficient service of process, (2) that the chancery court erred when it set the matter for trial, (3) that the chancery court erred when it awarded a judgment, (4) that the chancery court erred when it denied Lexington's motion to set aside the judgment, and (5) that the chancery court erred when it awarded a judgment based on improper amended complaints. Aggrieved by the chancellor's decision to deny his motion to reconsider granting Lexington's motion for extension of time, Buckley cross-appeals and asks this Court to review that decision.
¶ 5. Finding that the chancery court lacked personal jurisdiction over Lexington because of improper service of process, and that the chancery court erred by conducting a trial on the merits where Lexington failed to answer Buckley's complaint or otherwise appear, we reverse the chancellor's decision to award a judgment in Buckley's favor. Because the chancery court lacked jurisdiction, Lexington's other issues become moot. Likewise, Buckley's cross-appeal becomes moot.

II.

FACTS AND PROCEDURAL HISTORY
¶ 6. This complicated case involves a terrible accident, a lawsuit by a witness to that accident, a failed settlement, litigation over that failed settlement, and an end result of two awards to the original plaintiff. The plaintiff's first award came by way of a settlement related to the original claim. The plaintiff's second award stems from a judgment connected to the litigation over the failed settlement.
¶ 7. Charles Buckley is the plaintiff in both of the underlying actions and the appellee and cross-appellant in the matter at hand. During August of 1998, Charles Buckley "bush hogged" the medians near the intersection of I-55 and Lakeland Drive in Jackson, Mississippi. As Buckley mowed, the mower blade, manufactured by Allied Products, broke and shot out from under the mower.
¶ 8. Tragically, Camilla Dawn Haynes, traveling with her children and her mother, died when the mower blade went through the windshield of her van and virtually decapitated her. Camilla's mother *862 and children survived. Buckley only realized the cause and severity of the situation when he approached Camilla's van and saw the results of the broken mower blade for the first time.

A.

Claim One
¶ 9. In November of 2000, Buckley filed a complaint in the Covington County Circuit Court. By way of his complaint, Buckley asserted claims against Allied Products. Buckley claimed that he suffered emotional trauma from having witnessed the event mentioned above. Allied's insurer, Lexington Insurance Company, retained counsel and had Buckley's claim removed to federal district court. Meanwhile, Allied filed Chapter 11 bankruptcy proceedings. On December 4, 2001, Buckley had the bankruptcy stay lifted and proceeded with his claim against Allied.
¶ 10. In October of 2002, Buckley and Lexington, on Allied's behalf, attended a conference aimed at developing the prospects of settling Buckley's claim. Accordingly, the parties reached a tentative settlement agreement. Lexington offered to pay Buckley $140,000, provided Allied and the creditor committee in the bankruptcy proceeding withdrew their pending claims against Allied's policy and any proceeds from that policy.
¶ 11. Buckley's attorney responded with a letter and accepted the terms, but Buckley added the condition that Lexington must tender the $140,000 within ten days of the date of the mailing of Buckley's response letter. While Buckley claims that his response to Lexington's offer constituted a valid acceptance, Lexington disputes that claim and argues that Buckley, by adding the condition of payment within ten days, actually tendered a counteroffer. However, this dispute is immaterial to the present issues, which will become clearer as this opinion proceeds. At any rate, Buckley did not receive payment within ten days. Lexington claims the delay occurred as a result of Allied's bankruptcy proceedings. That is, Lexington could not acquire the funds until it could be sure that, in so doing, it had clearance from Allied and the bankruptcy creditor committee. Rather than moving forward with his claim, Buckley attempted to enforce the settlement.

B.

Buckley Attempts to Enforce the Settlement of Claim One
¶ 12. Buckley sought two avenues to enforce the settlement. First, Buckley went to the federal district court and filed his motion to enforce the settlement. The federal district court granted Buckley's motion to enforce and ordered Lexington to pay Buckley $140,000 within seven days of the filing of that order. Lexington appealed the order enforcing the settlement, but the record is silent as to the results of that appeal. Buckley's second attempt at enforcing the settlement would eventually give rise to this appeal.

C.

Claim Two
¶ 13. On December 31, 2002, Buckley filed a complaint in the Covington County Chancery Court. In his complaint, titled "Complaint for Specific Performance and Other Relief," Buckley asserted claims for (1) tortious interference with a settlement agreement, (2) intentional infliction of emotional distress, (3) breach of contract, and (4) specific performance of the settlement agreement. As for damages, Buckley requested "specific performance of the [s]ettlement [a]greement, plus interest since *863 November 1, 2002, attorneys fees, costs, interest, and all compensatory and punitive damages allowed by law." Buckley also requested "all other relief, either general or specific, as he may be entitled to."
¶ 14. On February 14, 2003, Buckley filed his first amended complaint. Buckley amended the requested damages portion of his original complaint. Though the requested damages in his original request were open and non-specific, Buckley's amended request sought relief "not to exceed $74,500."
¶ 15. On February 26, 2003, Lexington paid Buckley the $140,000 contemplated in their settlement agreement. Consequently, Lexington paid Buckley the amount of money that Buckley sought in his specific performance action. Regardless, Buckley's specific performance action proceeded in the chancery court.
¶ 16. On April 7, 2003, Buckley attended a hearing before the Covington County Chancery Court. No one was present for Lexington or Allied, and Lexington had not answered Buckley's complaint or entered an appearance. Still, Buckley and the chancery court set a trial date for April 10, 2003.
¶ 17. On April 8, 2003, Buckley filed his second amended complaint. Again, Buckley amended his damages request. While his first amended complaint modified his damages request to $74,500, Buckley's second amended complaint was non-specific as to the requested damages. Like his original complaint, Buckley's second amended complaint modified his damages to a request for "interest on $140,000 from November 1, 2002, to February 28, 2003, attorneys' fees, costs, interest, and all compensatory and punitive damages allowed by law." Buckley also modified his request to include "all other relief, either general or special, as he may be entitled to."
¶ 18. On April 10, 2003, Buckley showed up for trial, but no one was present for Lexington. Likewise, Lexington had not responded to any of Buckley's three complaints, or entered an appearance. The chancellor had Buckley put forth evidence from two witnesses, as well as eleven exhibits. After the trial, the chancellor entered the following judgment:
THIS CAUSE having come on for hearing on its merits and the Court after taking evidence, having heard testimony of two witnesses and reviewing eleven exhibits identified and admitted.
FINDS:
1. Lexington Insurance Company failed to answer or plead and is defaulted.
2. Charles Buckley suffered severe emotional distress and mental injury as a result of the unreasonable and vexatious conduct of Lexington Insurance Company.
WHEREFORE IT IS ORDERED THAT the Plaintiff, Charles Buckley is hereby awarded the sum of $75,000.00 for compensatory damages for his injuries sustained, plus the sum of $37,500.00 in actual attorney's fees and the sum of $1,012,500.00 as punitive damages, for a total judgment of $1,125,000.00 against Lexington Insurance Company.

D.

Proceedings Following the Judgment
¶ 19. According to Lexington, it first heard about the judgment on or about May 20, 2003. Lexington filed two motions after it heard about the default judgment. On June 3, 2003, Lexington filed its first posttrial motion: a motion to extend time for appeal or, alternatively, to reopen time for an appeal. On June 9, 2003, the chancellor *864 entered an order and granted Lexington's motion to extend time for appeal. Lexington appealed the chancellor's April 10th judgment. That appeal is one of the present consolidated appeals.
¶ 20. Also on June 9, 2003, Lexington filed its second posttrial motion: a motion to set aside the April 10th default judgment. On June 19, 2003, Buckley filed his motion to reconsider Lexington's extension of time to appeal. On August 15, 2003, the parties conducted a hearing on two motions: Lexington's motion to set aside the judgment, and Buckley's motion to reconsider Lexington's extension of time. The chancellor denied both motions. The other consolidated appeal follows the chancellor's denial of Lexington's motion to set aside the judgment.

STANDARD OF REVIEW
¶ 21. We examine two consolidated appeals. The first appeal is of the chancery court judgment. The second appeal is of the chancellor's decision to deny a motion to set aside the judgment. "When reviewing fact-based findings, we will only examine whether the trial court abused its discretion and whether there was substantial evidence supporting the determination." Triple "C" Transport, Inc. v. Dickens, 870 So.2d 1195 (¶ 15) (Miss.2004) (citations omitted). We review a question of law de novo. Id.

ANALYSIS

I.

Is the judgment against Lexington void based on defective service of process?
¶ 22. Lexington finds fault with the service of process incident to this matter. Lexington claims that the chancery court judgment is void for lack of personal jurisdiction. Buckley maintains that service of process was appropriate under Rule 4 of the Mississippi Rules of Civil Procedure and Section 83-21-37 of the Mississippi Code.
¶ 23. If Buckley failed to comply with the standards governing adequate service of process, then the chancery court lacked personal jurisdiction over Lexington. If the chancery court lacked personal jurisdiction over Lexington, then the judgment is invalid because "no judgment order or decree is valid or binding upon a party who has had no notice of the proceeding against him." James v. McMullen, 733 So.2d 358 (¶ 3) (Miss.Ct.App.1999).
¶ 24. Lexington is not incorporated in Mississippi. It has no registered agent for service of process here. For all intents and purposes, Lexington is a nonresident of Mississippi. "The Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests on nonresident defendants." Noble v. Noble, 502 So.2d 317, 319-20 (Miss.1987) (quoting Kulko v. California Superior Court, 436 U.S. 84, 91, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978)). "When a defendant is a non-resident of the state... and the court has jurisdiction of the subject matter, it is necessary that complainants be able to obtain process on a non-resident defendant by some means; otherwise, parties would not be able to enforce their rights in a judicial proceeding." Mosby v. Gandy, 375 So.2d 1024, 1030 (Miss.1979). Thus, to enter a valid judgment, a "court must not only have jurisdiction of the subject matter, but also of the persons of the parties to give validity to its final judgment." James v. McMullen, 733 So.2d 358 (¶ 3) (Miss.Ct. App.1999) (citing Rice v. McMullen, 207 Miss. 706, 727, 43 So.2d 195, 201 (1949)).
*865 ¶ 25. "The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process." James, 733 So.2d at (¶ 3). "Service of process is simply the physical means by which [personal] jurisdiction is asserted." Id. (citations omitted). "The existence of personal jurisdiction... depends upon the presence of reasonable notice to the defendant that an action has been brought." Noble, 502 So.2d at 320 (quoting Kulko, 436 U.S. at 91, 98 S.Ct. 1690).
¶ 26. Under the present circumstances, Buckley intended to utilize statutory provisions to effectuate reasonable notice through service of process. Our analysis mandates consideration of two overriding issues; (1) whether Buckley was entitled to serve process under the relevant provisions and (2) whether Buckley followed the logistic provisions necessary to complete proper service of process.

1.

Could Buckley serve the Mississippi Insurance Commissioner?
¶ 27. Buckley attempted to serve Lexington with process by mailing a copy of the summons and complaint to George Dale, the Mississippi Insurance Commissioner. It is undisputed that Dale is not Lexington's registered agent for service of process. Still, Mississippi law dictates that, under specific circumstances, service upon the insurance commissioner may be sufficient to effectuate service of process on an out-of-state insurer. Pursuant to Section 83-21-37 of the Mississippi Code, upon certain events, an unauthorized insurer appoints the Mississippi Insurance Commissioner as a statutory agent for service of process. Buckley contends that service of process was valid under Section 83-21-37 because Lexington acted in compliance with the methods for statutory appointment of the Mississippi Insurance Commissioner.
¶ 28. The legislature was specific as to what events constitute statutory appointment:
Any of the following acts in this state, effected by mail or otherwise, by an unauthorized or alien insurer: (1) the issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein, (2) the solicitation of applications for such contracts, (3) the collection of premiums, membership fees, assessments, or other considerations for such contracts, or (4) any other transaction of insurance business is equivalent to and shall constitute an appointment by such insurer of the commissioner of insurance and his successor or successors in office to be its true and lawful agent, upon whom may be served all lawful process in any action, suit, or proceeding instituted by or on behalf of an insured or beneficiary arising out of any such contract of insurance, and any such act shall be signification of its agreement that such service of process is of the same legal force and validity as personal service of process in this state upon such insurer.
Miss.Code Ann. § 83-21-37 (Rev.1999). So, for Buckley's service of process upon Dale to be appropriate, Lexington must have acted according to one of the four contemplated actions equating to statutory appointment.
¶ 29. The first instance by which an insurer appoints the insurance commissioner is where the insurer issues or delivers contracts of insurance to Mississippi residents or to corporations authorized to do business in Mississippi. Miss.Code Ann. § 83-21-37. Section 83-5-5 of the Mississippi Code defines a contract of insurance as "an agreement by which one *866 party for a consideration promises to pay money or its equivalent, or to do some act of value to the assured, upon the destruction, loss, or injury of something in which the assured or other party has an interest, as an indemnity therefor."
¶ 30. Assuming the settlement agreement was valid, clearly one party, Lexington, promised to pay Buckley a sum of money. However, the offer to pay money was not incident to the loss of something. Rather, Lexington offered to pay Buckley money because of the existence of Buckley's claim against Lexington's insured, Allied Products. As such, Buckley could not serve Lexington due to Lexington's issuance or delivery of insurance contracts, as no evidence in the record supports such a finding. So Lexington did not act in accordance with the first instance comprising statutory appointment of the insurance commissioner as Lexington's agent for service of process.
¶ 31. The second instance by which an insurer appoints the insurance commissioner as its registered agent for service of process occurs when the insurer solicits applications for insurance contracts. Miss. Code Ann. § 83-21-37 (Rev.1999). There is no proof in the record that Lexington solicited applications for insurance contracts to Mississippi residents or corporations licensed to do business in Mississippi. Likewise, Buckley does not allege that Lexington solicited such applications. Accordingly, we rule out the possibility that Lexington appointed Dale when Lexington solicited Mississippi residents for applications for insurance contracts. So Lexington did not act in accordance with the second instance comprising statutory appointment of the insurance commissioner as Lexington's agent for service of process.
¶ 32. The third instance in which an insurer appoints the insurance commissioner occurs when the insurer collects premiums or other valuable consideration. Miss.Code Ann. § 83-21-37 (Rev.1999). Like the second instance, there is no proof in the record that Lexington acted accordingly, nor does Buckley allege such. Thus, we do not find that Lexington appointed Dale due to Lexington's collection of insurance premiums. So Lexington did not act in accordance with the third instance comprising statutory appointment of the insurance commissioner as Lexington's agent for service of process.
¶ 33. Finally, the last instance in which an insurer appoints the insurance commissioner occurs when an insurer conducts any other transaction of insurance business. Miss.Code Ann. § 83-21-37 (Rev. 1999). The statute does not specifically define what constitutes conducting a transaction of insurance business. Whether Lexington was conducting a transaction of insurance business when it negotiated a settlement on behalf of its insured is questionable. Still, it is unnecessary to determine whether Lexington's conduct fits within the criteria of "conducting insurance business" if Buckley did not follow the proper procedures for effectuating service of process. Assuming, for the sake of argument, that negotiating a settlement of a claim on behalf of an insured constitutes a transaction of insurance business, Buckley must still follow proper procedures to effectuate valid service of process.

2.

Did Buckley follow the statute governing proper service of process?
¶ 34. Buckley attempted to serve process on Lexington by mailing a copy of the summons and complaint to George Dale, the Mississippi Commissioner of Insurance. Lexington claims that Buckley failed to follow the necessary procedures in effectuating proper service of process. Buckley contends that service of process *867 on the insurance commissioner was valid pursuant to Section 83-21-39 of the Mississippi Code of 1972 and Rule 4 of the Mississippi Rules of Civil Procedure.
¶ 35. Section 83-21-39 of the Mississippi Code sets forth a specific procedure for service of process:
Such service of process shall be made by delivering to and leaving with the commissioner of insurance, or some person in apparent charge of his office, two (2) copies thereof and the payment to him of such fees as may be prescribed by law. The commissioner of insurance shall forthwith mail by registered mail or certified mail one of the copies of such process to the defendant at its last known principal place of business, and shall keep a record of all process so served upon him. Such service of process is sufficient, provided notice of such service and a copy of the process are sent within ten (10) days thereafter by registered mail or certified mail by plaintiff or plaintiff's attorney to the defendant at its last known principal place of business, and the defendant's receipt, or receipt issued by the post office with which the letter is registered, showing the name of the sender of the letter and the name and address of the person to whom the letter is addressed, and the affidavit of the plaintiff or plaintiff's attorney showing a compliance herewith are filed with the clerk of the court in which such action is pending on or before the date the defendant is required to appear, or within such further time as the court may allow.
Miss.Code Ann. § 83-21-39 (Rev.1999).
¶ 36. Accordingly, the first step in service of process under Section 83-21-39 is to "deliver and leave with the commissioner of insurance, or some person in apparent charge of his office, two copies of the summons and complaint." Id. Lexington reasons that Buckley failed to "deliver and leave" the summons and complaint with the insurance commissioner when Buckley mailed the summons and complaint to George Dale. Lexington claims that the law requires personal service of process on Dale, the Mississippi Insurance Commissioner.
¶ 37. Section 83-21-39 does not specifically define what "deliver and leave with" entails. That description suggests that a plaintiff must execute personal service of process. That is, while one could accomplish "delivery" by mail, it is impossible to deliver "and leave with" by mail. To leave something, someone must personally present that something. So, unless a process server personally delivers the summons and complaint, it is impossible to leave a summons and complaint.
¶ 38. Despite the fact that Section 83-21-39 does not specifically state that "deliver and leave with" equates to personal service of process, the Mississippi Rules of Civil Procedure are dispositive of this issue. The Mississippi Rules of Civil Procedure control "where no statute applicable to the proceedings provides otherwise or sets forth procedures inconsistent with" a provision of the Rules of Civil Procedure. M.R.C.P. 1. The rules for service of process are contained in Rule 4 of the Mississippi Rules of Civil Procedure. Section 83-21-39 does not address the means for delivering service of process. Nor does that statute provide for procedures of delivering service of process inconsistent with Rule 4. As such, Rule 4 controls where Section 83-21-39 is silent or nonspecific. E.g., M.R.C.P. 1. So, we turn to Rule 4 to resolve whether Buckley may serve the insurance commissioner, whose office is located in Mississippi, by certified mail.
¶ 39. In Triple "C" Transport, 870 So.2d at (¶ 21), the Mississippi Supreme *868 Court held that "[s]ervice of process may not be had by certified mail upon an in-state defendant." Undoubtably, Lexington is not an "in-state" defendant, but their alleged statutory agent for service of process is a Mississippi resident, and it was the insurance commissioner that Buckley served. "The comment to [Rule 4(c)(5)] provides that `[t]he certified mail procedure is not available to serve a person within the state.'" Id. Accordingly, the certified mail procedure is not available to serve the insurance commissioner.
¶ 40. Moving on, the second requirement under Section 83-21-39 mandates that "[t]he commissioner of insurance shall forthwith mail by registered mail or certified mail one of the copies of such process to the defendant at its last known principal place of business, and shall keep a record of all process so served upon him." The insurance commissioner fulfilled his statutory obligation to mail a copy of the summons and complaint to Lexington when Dale sent Lexington a copy of the summons and complaint by certified mail, return receipt requested. The record contains the return receipt. Suffice it to say, Dale fulfilled the second statutory step.
¶ 41. However, Buckley was obligated to send Lexington, via certified mail, notice of service and a copy of process within ten days after Buckley served Dale with process. Miss.Code Ann. § 83-21-39. The record contains no evidence suggesting that Buckley fulfilled this step. What is more, two additional filings are necessary to complete service of process under Section 83-21-39: Buckley should have filed Lexington's receipt with the court clerk, and Buckley should have filed an affidavit of compliance with the court clerk. As mentioned, the return receipt incident to Dale's obligation to send a copy of the summons and complaint to Lexington does appear in the record. There is no other return receipt incident to Buckley sending Lexington notice of service and a copy of process within ten days of serving Dale. Moreover, the record does not contain Buckley's filed affidavit of compliance.
¶ 42. As it stands, Buckley improperly served process via certified mail to a person within the state. No evidence suggests that Buckley mailed the notice of service to Lexington since the return receipt incident to such a mailing does not appear in the record. Likewise, Buckley failed to comply with Section 83-21-39 because the record contains no evidence that Buckley filed his affidavit of compliance. Consequently, Buckley did not complete service of process.
¶ 43. Still, Buckley contends that the return receipt demonstrates that Lexington received Dale's certified letter, along with a copy of the summons and complaint on February 10, 2003. The statute is clear. Dale's obligation to send a copy of the summons and complaint to Lexington is only one obligation under the statute. Section 83-21-39 does not provide that service of process is proper where a plaintiff meets the obligations that he chooses, nor does it provide that service of process is proper where the plaintiff meets some or most of the obligations listed. Rather, Buckley had to fulfill every obligation under the statute. The evidence and record before this Court demonstrates that Buckley failed in that regard.
¶ 44. Moreover, the Mississippi Supreme Court has dictated that "actual knowledge by a defendant of the pendency of a suit against him is immaterial, unless there has been a legal summons or a legal appearance." James, 733 So.2d at (¶ 3) (citations and internal quotations omitted). "In the absence of process on a defendant, even though the defendant may know of the pendency of the action, defendant's *869 knowledge of the existence of the action does not supply the want of compliance with requirements of valid process." Mosby v. Gandy, 375 So.2d 1024, 1027 (Miss. 1979).
¶ 45. "Service of process on a non-resident defendant is jurisdictional, requiring strict compliance with statutory procedures." Birindelli v. Egelston, 404 So.2d 322, 323-24 (Miss.1981). Since Buckley failed to serve appropriate process on Lexington, the chancery court lacked jurisdiction to grant a judgment in Buckley's favor. Unfortunately, this matter does not end with resolution of this issue. We now turn to the judgment against Lexington.

II.

THE JUDGMENT
¶ 46. There has been much confusion on the topic of the judgment, and rightfully so. Lexington never responded to Buckley's complaint and never entered an appearance, but the chancellor granted a judgment after a trial on the merits. The chancellor specifically stated that the judgment was not a default judgment, despite the language in the judgment citing Lexington's default. So, what type of judgment was it?
¶ 47. The judgment stated that "Lexington Insurance Company failed to answer or plead and is defaulted." However, during the August 15, 2003 hearings, the chancellor stated that the judgment was not a default judgment. What is more, during the hearing, the chancellor clarified his reasoning on why the judgment was not a default judgment. When counsel for Lexington pointed out that the record did not contain the court clerk's entry of default, the chancellor explained "[y]ou won't ever find [an entry of default] in mine. I don't let my clerks file them." The chancellor elaborated:
I do not let [the clerks enter default]. I set the cases. I set cases for trial. I have docket calls every time I have trial. If somebody does not answer, I set the case for trial and we try it. If somebody is not there, then technically they are in default, but I don't consider it as a default. I consider it as them not being there, and putting on whatever testimony they want to put on. So my clerks have been instructed by me not to enter defaults because I'm not going to enter a judgment based on defaults. There's no sense in cluttering up the file.
Later during the same hearing, the chancellor further elaborated on his procedure:
The chancellor: So you're taking this that I gave them a default judgment, is that your position?
Lexington: Yes, sir. That's what the judgment says, that they were defaulted.
The chancellor: No. It didn't say they were defaulted. It just says they are in default which
Lexington: Lexington Insurance Company failed to answer a plea and is defaulted.
The chancellor: Okay.
Lexington: David [Shoemake] prepared it.
The chancellor: Okay.
Lexington: If you look at 54(c). I have given the Court as tab C there
The chancellor: I'm going to be real honest, I don't need to hear anything because as far asif your sole basis is arguing that that was a default judgment, then I can overrule your motion right now and you can take it to the Supreme Court ever how you want to take it because I heard the case. I set it at docket call. The people were *870 in default in that they did not answer. I did grantit was never the intention of this court and I think the record will reflect that. I may be wrong, but I don't think anywhere in there I said I'm giving you a default judgment. I think I said I'm giving you a judgment for this, this, this and this.
Thus, the chancellor specifically stated that it was his intent that the judgment was not a default judgment, but a trial on the merits.
¶ 48. Again, we turn to the Mississippi Rules of Civil Procedure. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default." M.R.C.P. 55(a). The Rule does not offer any room for discretion. When a party does not plead or otherwise defend a claim, the clerk is directed to enter a default. It is undisputed that Lexington did not answer or plead in response to Buckley's complaint. The proper procedure would have been to pursue a default judgment, as Rule 55 does not offer the option in the use of the word "shall." If Rule 55 said that the clerk may enter default, it might be otherwise, but the Rule is clear. The chancellor erred by conducting a trial on the merits.

BUCKLEY'S CROSSAPPEAL
¶ 49. Having found that the chancery court lacked jurisdiction to award a default judgment against Lexington, there is no need to consider the merits of Buckley's cross-appeal.

CONCLUSION
¶ 50. This case proceeded by flawed procedure from its inception. Not only did Buckley fail to serve process, but the chancellor erred when he failed to follow our rules of civil procedure. Because the chancery court lacked personal jurisdiction to enter a judgment following an improper trial on the merits, it is unnecessary to delve into the questionable amendment of complaints and whether the chancellor should have granted Lexington's motion for extension of time to appeal. Regardless, the chancery court lacked personal jurisdiction over Lexington. In default cases, where proper service of process is not shown in the record, the default judgment is void. Williams v. Kilgore, 618 So.2d 51, 56 (Miss.1992). Finding the judgment void, we reverse the chancery court's judgment and render judgment for Lexington.
¶ 51. THE JUDGMENT OF THE COVINGTON COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.