755 So.2d 467 (1999)
James Doyce REYNOLDS, Appellant,
v.
Billie Jo (Curtner) REYNOLDS, Appellee.
No. 97-CA-01243-COA.
Court of Appeals of Mississippi.
February 23, 1999.
Rehearing Denied May 18, 1999.
Certiorari Denied August 19, 1999.
H.R. Garner, Hernando, Attorney for Appellant.
George McFall, Southaven, Attorney for Appellee.
BEFORE THOMAS, P.J., LEE, PAYNE, AND SOUTHWICK, JJ.
PAYNE, J., for the Court:

PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. This case is before the Court challenging the judgment granting a divorce to the appellee, Billie Jo Curtner Reynolds, *468 on the grounds of habitual cruel and inhuman treatment and adultery, as well as the chancellor's equitable division of the marital estate. Feeling aggrieved, the appellant, James(Jim) Doyce Reynolds seeks relief from this Court alleging the following three points for our consideration: whether the court erred in granting Billie a divorce on the grounds of habitual cruel and inhuman treatment, whether the chancellor erred in granting Billie a divorce on the grounds of adultery, and whether the chancellor misapplied the law in equitably dividing the marital property. After reviewing the record and applicable precedents, we affirm.

FACTS
¶ 2. Jim Reynolds and Billie Reynolds were married on March 23, 1979, in Memphis, Tennessee. Jim is retired from the Army Corp. of Engineers and Billie is a hairdresser. In 1980, Jim and Billie separated due in part to the death of Jim's eldest son from a previous marriage and the fact that Billie had an unemancipated daughter from a previous marriage with whom Jim had a strained relationship. After the separation, the couple reconciled. However, marital difficulty once again struck Jim and Billie in 1995. Billie filed a complaint for divorce on November 20, 1995. However, this complaint was dismissed on March 29, 1996, after the couple attempted to reconcile. Unfortunately, this attempt was unsuccessful, and Billie filed a complaint of divorce on July 10, 1996, seeking a dissolution of her marriage to Jim on the grounds of habitual cruel and inhuman treatment, adultery, and irreconcilable differences. Jim filed his response, denying the pertinent parts of Billie's complaint.
¶ 3. After a one day trial, the chancellor issued an order granting Billie a divorce on the grounds of habitual cruel and inhuman treatment and adultery. The chancellor found that certain marital assets were subject to equitable division as follows:
the marital home (ordered sold and each party given 50% of proceeds)
four rental properties in Shelby County, Tennessee (each party held to have a 25% undivided interest; Jim ordered to quitclaim Billie's interest accordingly in each property)
5600 shares of Kroger stock (Jim and Billie each granted 2800 shares each)
300 shares of Wal Mart stock (Jim and Billie each granted 150 shares each)
Further, the chancellor found that 38% of Jim's government retirement was accumulated during the marriage. Therefore, due to Billie's contributions to the marital home, she was awarded one-half, or nineteen percent of Jim's retirement benefits. Alimony was denied, with the exception of $9,000 Billie had already received prior to the order.
¶ 4. Each party was ordered to pay his/ her respective attorney's fees. From this order, and after a denial of a motion for reconsideration, Jim perfected this appeal.

STANDARD OF REVIEW
¶ 5. The standard of review employed by this Court in domestic relations cases is abundantly clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court was manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. Andrews v. Williams, 723 So.2d 1175 (Miss.App.1998) (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997); Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994); Crow v. Crow, 622 So.2d 1226, 1228 (Miss.1993); Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991)).

ANALYSIS AND DISCUSSION OF LAW

I. WHETHER THE CHANCELLOR ERRED IN GRANTING BILLIE A DIVORCE ON THE GROUNDS OF ADULTERY
*469 ¶ 6. Jim alleges that the chancellor erred in granting Billie a divorce on the grounds of adultery. After reviewing the record and applicable precedents and in light of our limited standard of review, we must affirm the chancellor's decision.
¶ 7. Our statutory law provides that adultery is a valid ground for dissolving the matrimonial bonds with two exceptions: where it appears the adulterous activity was done in collusion to gain a divorce or unless the parties cohabited after ascertaining knowledge of the alleged adultery. Miss.Code Ann. § 93-5-1(2) (1998 Supp.). Where adultery is alleged, the chancellor is required to set forth specific findings of fact and conclusions of law in this regard. Holden v. Frasher-Holden, 680 So.2d 795, 798 (Miss.1996) (citing McAdory v. McAdory, 608 So.2d 695, 699 (Miss.1992); Dillon v. Dillon, 498 So.2d 328, 330 (Miss.1986)). A charge of adultery may be established by showing an adulterous inclination coupled with an opportunity to consummate the inclination. Holden, 680 So.2d at 798 (citing Owen v. Gerity, 422 So.2d 284, 287 (Miss. 1982)). The inclination may be proven by showing either an infatuation with a particular person or a general adulterous propensity. Holden v. Frasher-Holden, 680 So.2d 795, 798 (Miss.1996) (citing McAdory v. McAdory, 608 So.2d 695, 700 (Miss.1992)). Where the accusing spouse relies on circumstantial evidence to support allegations of infidelity, the accuser carries a heavy burden of convincing the trier of fact of the accused adulterer's guilt through logical evidence tending to prove the allegation that is inconsistent with a reasonable theory of innocence; however, the proof need not be beyond a reasonable doubt, and direct evidence is not required given the inherently secretive nature of adulterous relationships. Owen, 422 So.2d at 287 (citing and quoting Banks v. Banks, 118 Miss. 783, 79 So. 841 (Miss.1918)); Rodgers v. Rodgers, 274 So.2d 671, 673 (Miss.1973).
¶ 8. In this case, Jim's alleged paramour was Katherine Hamilton. Testimony established that Jim had on numerous occasions danced with Hamilton at various social establishments. Boyce Curtner, Billie's brother, testified that he considered Jim a friend. Curtner had been with Jim and Hamilton on various occasions and noticed that Jim paid Hamilton a lot of attention. Sherry Pierce, Billie's niece, also testified to the fact that Jim seemed to be taken with Hamilton. In addition, Pierce took photographs and video of Jim's vehicle parked at Hamilton's home overnight on two occasions. Billie testified that she had seen Jim's car at Hamilton's home at night as well on one occasion. Jim admitted staying overnight with Hamilton but denied having sexual intercourse with her, maintaining that they only talked about his marital problems. However, Jim admitted that he had every opportunity to consummate his relationship with Hamilton.
¶ 9. This is obviously a circumstantial evidence case of adultery. Under the Frasher-Holden inclination test coupled with the Owen opportunity doctrine, we cannot say that the chancellor committed manifest error or misapplied the law in his findings. Accordingly, we affirm.

II. WHETHER THE COURT ERRED IN GRANTING BILLIE A DIVORCE ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT
¶ 10. Jim's next assignment of error alleges that the chancellor erred in granting Billie a divorce on the grounds of habitual cruel and inhuman treatment. Having already determined that Billie was entitled to a divorce on the grounds of adultery, the issue is moot regarding the sufficiency of the evidence as to habitual cruel and inhuman treatment. Accordingly, we need not reach this issue, and we decline to do so.

III. WHETHER THE CHANCELLOR MISAPPLIED THE APPLICABLE *470 LAW IN EQUITABLY DIVIDING THE MARITAL PROPERTY
¶ 11. For the purpose of divorce, the Mississippi Supreme Court has defined marital property "as being any and all property acquired or accumulated during the marriage." Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Such marital assets acquired during the course of the marriage may be equitably divided "unless it can be shown by proof that ... [the] assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." Id. at 914. In arriving at an equitable distribution of marital property, the supreme court has suggested that chancellors should consider the following guidelines set forth in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss. 1994):
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
¶ 12. In his order, the chancellor clearly articulated his rationale for the equitable division of the marital estate. The trial court found that the property set forth above had been commingled over the marriage and had lost its non-marital character. Maslowski v. Maslowski, 655 So.2d 18, 20 (Miss. 1995). Seeing no manifest error or erroneous legal applications, we affirm the chancellor's decision with regard to the equitable distribution of the marital estate.
¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST THE APPELLANT.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, IRVING, KING, LEE, AND SOUTHWICK, JJ., CONCUR.