906 So.2d 863 (2005)
Linda STRIBLING, Appellant,
v.
Carl William STRIBLING, Appellee.
No. 2003-CA-00731-COA.
Court of Appeals of Mississippi.
January 11, 2005.
Rehearing Denied April 5, 2005.
Certiorari Denied June 30, 2005.
*865 Sharon Patterson Thibodeaux, Jackson, attorney for appellant.
Mark A. Chinn, Jackson, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
*866 KING, C.J., for the Court.
¶ 1. Linda Stribling filed a complaint for divorce against Carl Stribling, alleging constructive desertion, or alternatively, irreconcilable differences, in the Madison County Chancery Court. Carl Stribling filed an answer and a countercomplaint for divorce based upon the ground of uncondoned adultery. Mr. Stribling's countercomplaint for divorce was granted. The chancellor granted Mr. Stribling periodic alimony, a portion of the marital assets, and attorney's fees. Aggrieved, Mrs. Stribling has appealed and raised the following issues which we quote verbatim:
I. Did the lower [c]ourt commit manifest error in denying [a]ppellant a divorce on the ground of uncondoned adultery?
II. Did the lower [c]ourt commit manifest error in failing to award custody of the minor child to either party and in failing to make a provision for the support and maintenance of the minor child?
III. Did the lower [c]ourt commit manifest error in its application of the Ferguson factors and in failing to state which Ferguson factor the evidence supported?
IV. Did the lower [c]ourt commit manifest error in its classification and valuing the assets of the [a]ppellant and in failing to take into consideration or make any findings as to the debt associated with the assets?
V. Did the lower [c]ourt commit manifest error in awarding [a]ppellee $221,229.37 lump sum as his share of the liquidated proceeds of marital assets?
VI. Did the lower [c]ourt commit manifest error in awarding [a]ppellee $5,000.00 per month in periodic alimony?
VII. Did the lower [c]ourt commit manifest error in awarding [a]ppellee $24,901.90 in attorneys fees?
VIII. Did the lower [c]ourt commit manifest error by vacating its previous order of contempt against Carl William Stribling?
IX. Was the lower [c]ourt arbitrary and capricious in its findings and conclusions?

FACTS
¶ 2. Carl and Linda Stribling were married on August 29, 1979, in Alabama. As a result of the marriage, two children were born-Kelly Lee Stribling, a son, born March 25, 1980, who was emancipated when this matter was decided, and Tina Anita Josie Stribling, a daughter, born April 17, 1982. Tina was less than four months away from her twenty-first birthday and living with Mrs. Stribling when this case was decided by the chancery court.
¶ 3. According to Mrs. Stribling, the parties lived together until about February 1996. Mr. Stribling then moved to the Marriott Hotel, where he resided until about April 1997, when Mrs. Stribling allowed him to move back into the marital residence to recover from back surgery.
¶ 4. On June 19, 1998, Mrs. Stribling filed a complaint for divorce alleging constructive desertion, or alternatively, irreconcilable differences. On June 28, 1998, Mrs. Stribling filed an amended complaint for divorce adding the grounds of habitual cruel and inhuman treatment and uncondoned adultery. On April 18, 2000, Mr. Stribling filed his answer to the complaint.
¶ 5. On September 4, 2001, Mr. Stribling filed another answer along with a counterclaim for divorce alleging uncondoned adultery.
¶ 6. Numerous motions were filed by the parties. At an August 8, 2001 hearing, the chancellor disposed of several of these motions. The testimony from that hearing *867 was incorporated into the record at the trial on June 5 and 6, 2002. At trial, Mrs. Stribling testified that her husband admitted in front of the congregation at Cobblestone Church of God, that he had committed adultery while married to her. She stated that she spiritually forgave Mr. Stribling's adultery. Mr. Stribling denied having committed adultery, and stated that he only made that claim to protect Mrs. Stribling because it was widely known that she had done so.
¶ 7. Mrs. Stribling admitted extramarital affairs, but claimed that her husband condoned the adulterous acts. Mr. Stribling denied condonation of these adulterous acts, and noted that he was not aware of some of these acts until the day of the deposition.
¶ 8. Mrs. Stribling ceased work at Hazlehurst Public Schools, in December 1979 to have children. In 1986, Mrs. Stribling obtained a real estate broker's license and began a real estate business in 1988.
¶ 9. When the parties married, Mr. Stribling was the owner of Stribling Brothers Enterprises, a company that sold modular buildings to school districts and other agencies. Mr. Stribling remained the owner of the business until about 1990, when he transferred title to Mrs. Stribling. The decision to transfer ownership of the business was based upon Mr. Stribling's federal criminal conviction and resulting four month jail sentence. Mrs. Stribling received her contractor's license in May 1990. She began running the business selling modular structures with the help of Sonny Edwards, an employee of Stribling Brothers Enterprises. Between 1990 and 1996, the business underwent two name changes. The business' name was changed to Linda Stribling, and later to Elite Modular Structures.
¶ 10. In an effort to address the business for purposes of equitable distribution, the chancellor appointed Raleigh Cutrer, an accountant, to do a valuation of the business interests. Mr. Cutrer indicated that the business records were incomplete and prevented a full valuation.
¶ 11. The chancellor executed a final judgment on December 27, 2002. The chancellor (1) granted Mr. Stribling a divorce upon the ground of uncondoned adultery, (2) awarded Mrs. Stribling the house and the lot located in Sebastopol, Mississippi, valued at $43,000, one acre of land, a lot given to her by her father and the household furnishings and personal items in her possession, (3) awarded Mr. Stribling twelve acres of land located in Sebastopol, valued at $25,000, an acre of land located in Edwards, Mississippi, and a lump sum in the amount of $221,229.37 as his share of previously liquidated marital assets, (4) granted to Mr. Stribling alimony in the amount of $5,000 per month, and (5) awarded Mr. Stribling $24,901.90 in attorney's fees.
¶ 12. On January 10, 2003, Mrs. Stribling filed a motion for a new trial, or in the alternative, to alter or amend final judgment, which was denied by Chancellor Shaw-Pierson's successor, Chancellor Goree, on March 5, 2003. Mrs. Stribling filed her notice of appeal on April 4, 2003.

STANDARD OF REVIEW
¶ 13. This Court employs a limited standard of review when reviewing a chancellor's decision. Shirley v. Christian Episcopal Methodist Church, 748 So.2d 672(¶ 9) (Miss.1999). The standard of review employed in domestic relations cases is limited to the substantial evidence/manifest error rule. Jundoosing v. Jundoosing, 826 So.2d 85(¶ 10) (Miss.2002). This Court will only reverse a chancery court's findings of fact when there is no substantial credible evidence to support its findings. *868 Id. "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997).

ISSUES AND ANALYSIS

I.

Did the chancery court commit manifest error in denying Mrs. Stribling a divorce on the ground of uncondoned adultery?
¶ 14. Where adultery is alleged as a ground for divorce, the chancellor is required to set forth specific findings of fact and conclusions of law. Reynolds v. Reynolds, 755 So.2d 467(¶ 7) (Miss.Ct. App.1999). "A charge of adultery may be established by showing an adulterous inclination coupled with an opportunity to consummate the inclination. The inclination may be proven by showing either an infatuation with a particular person or a general adulterous propensity." Id. "`Adultery may be shown by evidence or admissions and either are sufficient to support a decree of divorce."' Holden v. Frasher-Holden, 680 So.2d 795, 799 (Miss. 1996).
¶ 15. The chancellor determined that Mrs. Stribling's allegation of Mr. Stribling's adultery was unsupported and insufficient as grounds for divorce. Further, the chancellor found that even had Mrs. Stribling proven adultery, she had forgiven Mr. Stribling, and therefore condoned any adultery that had occurred. Wood v. Wood, 495 So.2d 503, 505 (Miss.1986).
¶ 16. At trial, Mrs. Stribling testified regarding her adulterous affairs. She admitted to acts of adultery with several different men but claimed that they occurred while she and her husband were separated and that Mr. Stribling condoned her acts. However, Mr. Stribling testified that he was unaware of some of Mrs. Stribling's affairs until she admitted to them at her deposition and that he had not condoned them.
¶ 17. The chancellor sits as the finder of fact, where those findings are supported by substantial evidence, this Court is bound by them. Hensarling v. Hensarling, 824 So.2d 583(¶ 7) (Miss.2002). There was clearly sufficient evidence to support the chancellor's finding of adultery by Mrs. Stribling. This issue is without merit.

II.

Did the chancery court err in failing to award custody of the minor child to either party and in failing to make a provision for the support and maintenance of the minor child?
¶ 18. Mrs. Stribling alleges error by the court for its failure to award custody of the minor child, Tina to either of the parties or to provide for her support and maintenance. Tina was born April 17, 1982 and was twenty years of age at the time of this divorce and was less than four months from being twenty-one years of age and being considered an adult. Mrs. Stribling is correct that the chancellor did not specifically provide for Tina's custody and support. Instead, the chancellor's decree recites "The parties agreed Tina Stribling was of sufficient age to decide with whom she wanted to live, and to exercise visitations as she so desired." Given Tina's age and the agreement of the parties, the Court finds at most this would have been harmless error. Ward v. Ward, 825 So.2d 713 (¶¶ 23-25) (Miss.Ct.App. 2002). The chancellor's order was entered December 27, 2002, and Tina became twenty-one years of age on April 17, 2003, a period of approximately four months. *869 There is no suggestion that during the period between December 27, 2002 and April 17, 2003, Tina suffered any lack of care or supervision. Under these facts, we find this issue to be without merit.

III.

Did the chancery court commit manifest error in its application of the Ferguson factors and in failing to state which Ferguson factor the evidence supported?
¶ 19. Mrs. Stribling alleges that the chancery court failed to consider several applicable Ferguson factors, which constitutes manifest error. She also contends that the chancery court failed to justify its division of the marital property by failing to clearly indicate which factors supported its findings.
¶ 20. This Court looks to the chancellor's application of the factors in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994), when reviewing questions of equitable distribution. The factors set forth in Ferguson are:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
Id.
"The chancellor is not required to address each and every factor and may consider only the factors which he finds applicable to the marital property at issue." Burnham-Steptoe v. Steptoe, 755 So.2d 1225(¶ 24) (Miss.Ct.App.1999). The chancellor considered the factors which she believed were applicable to the marital property. A review of the record indicates that the chancellor reviewed and adjusted the equities consistent with her findings.
¶ 21. This Court cannot say that those findings and the resulting distributions are unsupported by substantial evidence.

*870 IV.

Did the chancery court commit manifest error in its classification and valuing the assets of Mr. Stribling and in failing to take into consideration or make any findings as to the debt associated with the assets?
¶ 22. Mrs. Stribling argues that the court's failure to assign value to the marital assets constitutes manifest error.
¶ 23. When a chancellor fails to evaluate the marital assets of the parties, it becomes difficult "for this Court to perform its oversight responsibility," thus requiring further consideration by the chancellor. Scott v. Scott, 835 So.2d 82(¶ 13) (Miss.Ct.App.2002).
¶ 24. The chancery court determined the marital assets to be: (1) Elite Modular Structures, (2) Stribling Manufactured Housing, Inc., (3) a house with 12 acres of land in Sebastopol, Mississippi, valued at $43,000 (4) a house with a lot in Sebastopol, Mississippi, valued at $25,000 (5) a lot in Sebastopol, Mississippi, (6) stock accounts with Prudential Securities, (7) one acre of land located in Edwards, Mississippi, (8) a $26,000 certificate of deposit, (9) three Cadillacs, (10) a BMW, (11) a chicken farm with equipment in Sebastopol, Mississippi, (12) two parcels of property in Vicksburg, Mississippi, (13) household furnishings, and (14) personal property items.
¶ 25. The chancellor determined that Mrs. Stribling had failed to cooperate in the evaluation of the business, and provided improper financial information. Thus, the chancellor used the gross sales and net income to aid in a business valuation. Where a party fails to provide accurate information, or cooperate in the valuation of assets, the chancellor is entitled to proceed on the best information available. Dunaway v. Dunaway, 749 So.2d 1112 (¶¶ 14, 28) (Miss.Ct.App.1999). That is what the chancellor did, and this Court declines to hold her in error for doing so.

V.

Did the chancery court commit manifest error in awarding Mr. Stribling a lump sum of $221,229.37 as his share of the liquidated proceeds of marital assets?
¶ 26. The chancery court awarded Mr. Stribling a lump sum in the amount of $221,229.37 as his share of the marital assets previously liquidated by sale. The court found that Mrs. Stribling had disposed of marital assets and had committed waste by selling: (1) the inventory for Stribling Manufactured Housing, Inc., with net proceeds of $216,678.29, (2) two parcels of land in Vicksburg, Mississippi, (3) the chicken farm in Sebastopol, Mississippi, with net proceeds of $27,463 and (4) a lot in Pearl, Mississippi, with net proceeds of $203,439.95. The court determined that the total in gross sales was $676,643. However, the net profit was $447,581.24, of which the court awarded Mr. Stribling about half of that amount.
¶ 27. As noted in issue IV, the chancellor found that Mrs. Stribling failed to cooperate in the evaluation of assets and was not credible. Where a party has failed to cooperate in asset valuation, or to provide credible financial information, the chancellor is entitled to make a decision on the best information then available. Dunaway, 749 So.2d at (¶¶ 14, 28). If that is done, this Court will not find the chancellor in error. In this case, the chancellor made her decision upon the best information available from the parties.
¶ 28. The chancellor noted that while both parties had liquidated marital assets, Mr. Stribling had done so for the purpose of taking care of his living expenses and other needs. Accordingly, the chancellor *871 determined it appropriate not to make those assets chargeable to Mr. Stribling.
¶ 29. "This Court will not overturn the decision of a chancellor in domestic cases when those findings are supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, or applied an erroneous legal standard." Kennedy v. Kennedy, 650 So.2d 1362, 1366 (Miss.1995). This Court cannot say that the chancellor erred under the circumstances.

VI.

Did the chancery court commit manifest error in awarding Mr. Stribling $5,000 per month in periodic alimony?
¶ 30. Mrs. Stribling contends that she is totally incapable of paying $5,000 in periodic alimony. She argues that the court should have considered not only Mr. Stribling's reasonable needs but also her right to lead a normal life with a reasonable standard of living.
¶ 31. On loan applications from 1998 and 1999, Mrs. Stribling reported making $7,500 to $15,000 per month, but she argues that her income fluctuates tremendously because she is self-employed. Mrs. Stribling also claims that it is unfair to award Mr. Stribling over half of her reported net income when he receives social security disability payments of $1,126 per month. However, Mr. Stribling argues that since he is totally disabled, the periodic award is proper and necessary to achieve the goal of him being supported in a manner in which he is accustomed to the extent of Mrs. Stribling's ability to pay.
¶ 32. The question of a proper amount of alimony is a matter of the chancellor's discretion. Ethridge v. Ethridge, 648 So.2d 1143, 1145-46 (Miss.1995). Where the exercise of that discretion is supported by substantial evidence, we defer to it. Id.
¶ 33. In determining the proper amount of alimony, a chancellor should consider the Armstrong factors listed below:
1. the income and expenses of the parties;
2. the health and earning capacities of the parties;
3. the needs of each party;
4. the obligations and assets of each party;
5. the length of the marriage;
6. the presence or absence of minor children in the home;
7. the age of the parties;
8. the standard of living of the parties, both during the marriage and at the time of the support determination;
9. the tax consequences of the spousal support order;
10. fault or misconduct;
11. wasteful dissipation of assets by either party; or
12. any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Watson v. Watson, 724 So.2d 350(¶ 17) (Miss.1998).
¶ 34. In this case, the chancellor determined that based upon the information received by the court, Mrs. Stribling was able to pay the amount ordered. This finding is supported by substantial evidence, therefore this Court cannot say that the chancellor erred in her decision to grant alimony. Ethridge, 648 So.2d at 1145-46.

*872 VII.

Did the chancery court commit manifest error in awarding Mr. Stribling $24,901.90 in attorney's fees?
¶ 35. Mrs. Stribling argues that attorney's fees should not be awarded unless the party seeking fees can establish their inability to pay.
¶ 36. The trial court generally has discretion over the award of attorney's fees absent an abuse of discretion. Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss.1988).
¶ 37. Mrs. Stribling cites McKee v. McKee, 418 So.2d 764, 767 (Miss.1982), where the supreme court noted the following criteria should be applied to determine whether an award of attorney's fees should be granted:
The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
In applying these factors, Mrs. Stribling contends that awarding Mr. Stribling attorney's fees constitutes manifest error.
¶ 38. The chancellor held that Mr. Stribling had incurred attorney's fees of $73,942.05, much of which were incurred pursuing contempt actions against Mrs. Stribling due to her repeated failure to abide by court orders. The chancellor then determined that a partial award of attorney's fees, in the amount of $24,901.90 was appropriate, needed, and equitable. This Court must respect those findings of the chancery court which are supported by substantial evidence, Anderson v. Anderson, 692 So.2d 65, 72 (Miss.1997), and accordingly we cannot say that the chancellor abused her discretion in awarding attorney's fees.

VIII.

Did the chancery court commit manifest error by vacating its previous order of contempt against Mr. Stribling?
¶ 39. Mr. Stribling had disposed of the $26,000 certificate of deposit, a marital asset, without the court's approval. In May 2002, the chancery court found him in contempt, stating as follows:
This order is clear, and there is no evidence that Mr. Stribling either misunderstood, or was unable to abide by the order. Nor is there any evidence that the parties agreed in writing that Mr. Stribling could remove the certificate of deposit. Mr. Stribling chose not to abide by the terms of the Order. This Court, therefore, finds the Defendant in willful and contumacious contemp[t] for failure to abide by the terms of the February 8, 2001 Order. As sanctions therefor[e], the Court directs that the Defendant's equitable share of the mar[ital] asset[s] shall [be] reduced by $26,000.
In the final judgment, the court determined that the certificate was used to maintain Mr. Stribling pending the divorce. The chancellor determined this use not wasteful and as such vacated its previous order. Mrs. Stribling now asks this Court to find that the chancellor's action constitutes manifest error. The chancellor's finding on this matter is subject to an abuse of discretion standard. Kennedy, 650 So.2d at 1366. Where the exercise of that discretion is supported by substantial evidence, this Court is obligated to affirm. Anderson, 692 So.2d at 72.
*873 ¶ 40. This Court finds that the chancellor did not commit manifest error by vacating its previous order because it later determined that the disposal of the certificate was not wasteful.

IX.

Was the chancery court arbitrary and capricious in its findings and conclusions?
¶ 41. This issue as noted in issue IV lacks merit.
¶ 42. THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR. BRIDGES, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. LEE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BARNES, J.
BRIDGES, P.J., Concurring in Part, Dissenting in Part.
¶ 43. I agree with the majority in all circumstances, save the decision to award periodic alimony. Particularly, I cannot fully agree that Carl is entitled to $5,000 per month of periodic alimony. I do not claim that Carl is not entitled to such an award, or that Linda is unable to meet such a demand. Rather, I would hold that the chancellor's findings of fact are inadequate for this Court to uphold the chancellor's decision.
¶ 44. Granted that the decision "[w]hether to award alimony, and the amount to be awarded, are largely within the discretion of the chancellor." Magee v. Magee, 661 So.2d 1117, 1125 (Miss.1995) (citations omitted). Thus, barring an abuse of that discretion, a chancellor's decision is generally upheld. Still, Mississippi follows the principles of equitable distribution of marital property. According to our law, "[i]f there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties, no more need be done." Henderson v. Henderson, 703 So.2d 262(¶ 18) (Miss.1997) (quoting Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss. 1994)). Alimony should be considered only "[i]f the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party." Id.
¶ 45. Though the chancellor discusses, in great detail, the facts of the case and portions of the relevant and controlling law, she only mentions alimony in her statement that "Carl shall receive $5,000 per month in periodic alimony." Later, she expands on that notion by including the requirements that such be paid on the first of the month, until Carl dies or remarries. Other than a passing statement that Linda's obligation should cease if a modification of that judgment occurs, there is no other mention of periodic alimony. The chancellor does not explain how she arrived at that amount, nor does she describe why that amount is appropriate.
¶ 46. In Henderson, the supreme court reversed an award of periodic alimony because the chancellor did not make any findings regarding periodic alimony. I would hold similarly in this instance. Good, clear findings of fact and conclusions of law do more than fulfill some vague legal requirement. Such findings are necessary to declare a chancellor's reasoning and aid our appellate courts in resolving the issues *874 that arise in these situations. Because the majority finds no fault in the chancellor's insufficient findings, I must respectfully dissent.
LEE, P.J., Dissenting.
¶ 47. With respect to the majority, I dissent. After reading the record, I cannot find that substantial evidence existed to support the chancellor's award of periodic alimony in the amount of $5,000 per month or the award of $221,229.37 as half of the marital assets. Although some amount of alimony may be appropriate in this case, I fail to see the justification for an award of that amount. Furthermore, I would cite to In re: Dissolution of the Marriage of Profilet, 826 So.2d 91 (Miss. 2002), where the supreme court found that the husband's financial status was misrepresented in the chancellor's findings and, as a result, the chancellor erred in calculating the amount of alimony. In the case at bar I am not convinced that the chancellor either relied on Linda's net income or took into account her debts in determining alimony payments or equitable distribution. Therefore, I would reverse and remand on this issue for the chancellor to determine a more appropriate award of alimony, if any, and likewise, equitable distribution.
BRIDGES, P.J., AND BARNES, J., JOIN THIS SEPARATE WRITTEN OPINION.