16 So.3d 734 (2009)
David Maxwell PACE, Appellant,
v.
Sally PACE, Appellee.
No. 2007-CP-01052-COA.
Court of Appeals of Mississippi.
March 24, 2009.
Rehearing Denied September 1, 2009.
*735 David Maxwell Pace, pro se.
Sally Pace, pro se.
EN BANC.
KING, C.J., for the court.

FACTS AND PROCEDURAL HISTORY
¶ 1. David Maxwell Pace and Sally Pace were married on April 30, 2002, and separated in June of that same year. Sally filed for divorce on February 26, 2003, in the Jackson County Chancery Court. On March 31, 2007, she was granted a divorce on the ground of habitual cruel and inhuman treatment. David and Sally were married for approximately five years, but the couple never lived together and had no joint property or bank accounts. Sally lived in Gautier, Mississippi, and David lived in Orange Beach, Alabama. Sally stayed with David on two or three weekends *736 during the two months before they separated. The couple had one child together, David Cruise Pace (Cruise), who was born prior to the marriage on November 13, 1998. During the time that the couple was separated, Sally gave birth to another child, Stormy Langley, on July 7, 2005. Russell Langley is listed as Stormy's father on her birth certificate.
¶ 2. The Jackson County Chancery Court tried this matter on March 14, 2007. Both Sally and David were represented by counsel. Sally as well as Kathy Garrison, a friend of Sally's, testified regarding David and Sally's relationship. David was not present at the trial. David claimed that an emergency had occurred, which required him to take an adult son from a previous marriage to the hospital. The trial court denied a continuance requested by David's attorney because there was no proof that David was actually at the hospital. Sally informed the chancellor that during lunch, she had called and spoken with David at work. Based on the testimony of Sally and Garrison, the chancellor granted the divorce on the ground of habitual cruel and inhuman treatment and awarded physical custody of the couple's child to Sally. The chancellor established a visitation schedule and ordered David to pay $300 a month in child support.
¶ 3. David now appeals the order of the chancellor, asserting the following issues: (1) the chancellor did not have in personam jurisdiction over him; (2) the chancellor erred in granting a divorce based on habitual cruel and inhuman treatment; (3) the chancellor erred in failing to grant a continuance; and (4) the chancellor erred in not ordering a DNA test to prove the paternity of Stormy. Finding no prejudicial error, we affirm.

STANDARD OF REVIEW
¶ 4. Our standard of review on appeals from chancery court is limited. Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997). "The chancellor's findings of fact should not be interfered with unless they were `manifestly wrong, clearly erroneous or an erroneous legal standard was applied.'" Isom v. Jernigan, 840 So.2d 104, 106(¶ 6) (Miss.2003) (quoting Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990)). Questions of law, however, are reviewed de novo. Id.

DISCUSSION

I. WHETHER THE CHANCELLOR HAD IN PERSONAM JURISDICTION OVER THE PARTIES.
¶ 5. David argues that because he was never served with a summons, the chancery court lacked in personam jurisdiction over him and, therefore, could not lawfully grant a divorce. In his order granting the divorce, the chancellor held that jurisdiction was proper and denied all outstanding motions, including David's motion to dismiss for lack of jurisdiction.
¶ 6. In her complaint for divorce and motion for ex parte relief regarding child custody filed on February 26, 2003, Sally declared that David's current post office box, street address, and place of residence were unknown to her after diligent search and inquiry.[1] On that same day, the chancellor ruled on Sally's motion for ex parte relief, which requested that David return the couple's son to her. Sally had permitted their son to visit with David on February 18, with the agreement that the child *737 would be returned on February 25. Sally filed her complaint for divorce and motion for ex parte relief after David failed to return the child as agreed. On February 26, 2003, the chancellor granted Sally temporary custody upon the grounds that the child normally resided with her and needed medication which David could not provide him. David was served with an attested copy of the order granting ex parte relief, which also set the temporary custody issue for a hearing on March 14, 2003, at 9:00 a.m.
¶ 7. In response to the February 26 order, David appeared before the chancellor on March 14, 2003. At that time, the parties and their attorneys signed an agreed order dissolving the temporary ex parte order, establishing custody and a visitation schedule, and setting the case for trial on March 26, 2003. The case was not tried on March 26, 2003. However, on March 26, 2003, David filed a motion to contest jurisdiction. In that motion David stated that: (1) he had not been served with a summons or complaint, and (2) he had appeared in this case on March 14, 2003, in response to the February 26, 2003, temporary order.
¶ 8. On May 9, 2003, David filed a document entitled "Answer and Motion for Temporary Relief," in which he responded to the divorce complaint and requested that the trial court grant him custody of the minor child, or reasonable visitation, and "such other relief to which he may be entitled." In response, on June 4, 2003, the chancellor signed another temporary order. This order (1) gave the parties joint legal custody with primary physical custody given to Sally, (2) established a formal visitation schedule, (3) established temporary child support, and (4) set an October 14, 2003, trial date.
¶ 9. On July 10, 2003, David filed a "Motion to Reconsider and to Modify Custody Order" asking for a reduction in child support or paramount custody of the child. On August 14, 2003, the chancellor ordered this motion and a contempt motion by Sally to be heard by the Family Master. On September 30, 2003, Sally served her answers to David's interrogatories. On October 6, 2003, David, acting pro se, filed a motion for additional time to respond to the contempt motion and to reschedule the hearing.
¶ 10. The final ruling in this action did not occur until four years later. During that time, no ruling had been on David's motion contesting jurisdiction. On March 14, 2007, just before the chancellor made his ruling granting the divorce based on habitual cruel and inhuman treatment, David's attorney reminded the chancellor that there was an outstanding motion objecting to jurisdiction. The chancellor stated that all outstanding motions were denied and entered a final judgment of divorce.
¶ 11. In order for a judgment of a court to be valid, the court must have personal jurisdiction over the parties to the action. James v. McMullen, 733 So.2d 358, 359(¶ 3) (Miss.Ct.App.1999) (quoting Rice v. McMullen, 207 Miss. 706, 727, 43 So.2d 195, 201 (1949)). "The existence of personal jurisdiction, in turn, depends upon the presence of reasonable notice to the defendant that an action has been brought." Noble v. Noble, 502 So.2d 317, 320 (Miss.1987) (quoting Kulko v. Superior Court of California, 436 U.S. 84, 91, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978)). However, "absent some proof of [the] defendant's receipt of summons, the reasonableness of notice is questionable." Id.
¶ 12. No mention is made of service of process in the record other than Sally's contention that she was unable to determine an address at which to serve process *738 on David. Mississippi Rule of Civil Procedure 4(h) states: "If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint ... the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion." "If a defendant does not voluntarily appear to a cause against him, he cannot be gotten into court except in the manner laid down by law." Kolikas v. Kolikas, 821 So.2d 874, 878(¶ 17) (Miss.Ct.App.2002). Therefore, absent some proof that process was served upon David, the chancellor lacked jurisdiction to hear this matter unless David is deemed to have consented to jurisdiction by making a general appearance. Id.
¶ 13. Mississippi Rule of Civil Procedure 12(h)(1) states:
A defense of ... insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by a motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.
While David objected to jurisdiction by motion on March 26, 2003, and continued at various points to object to jurisdiction, we find that David's actions throughout the proceedings are inconsistent with his assertion of lack of jurisdiction.
¶ 14. While he later objected to jurisdiction, David appeared at the ex parte hearing on March 14, 2003. At that time, he both "approved and agreed" to that order which temporarily (1) provided for the parties to have joint legal custody, (2) placed physical custody with Sally, (3) established formal visitation, and (4) set the matter for trial on March 26, 2003. Even after he objected to the court's jurisdiction, David continued to make requests for relief from the chancery court and to file various motions, including: to hold Sally in contempt, to reconsider the order, to modify custody, and for leave to establish paternity.
¶ 15. "Mississippi does not recognize `special appearances' except where a party appears solely to object to the court's jurisdiction over her person on grounds that she is not amenable to process. One waives process and service, however, upon making a general appearance." Isom, 840 So.2d at 107(¶ 9) (internal citation omitted). This Court finds that by voluntarily appearing and fully participating in the March 14, 2003, hearing, David waived service of process and entered a general appearance for all purposes. This entry of appearance and waiver of process was reaffirmed on each of the many occasions that David invoked the jurisdiction of the trial court to grant to him some specific relief. See Dennis v. Dennis, 824 So.2d 604, 610(15) (Miss.2002) (quoting McGuire v. Sigma Coatings, Inc., 48 F.3d 902, 907 (5th Cir.1995)). Therefore, this Court finds that the chancellor was correct in denying David's motion for lack of jurisdiction.

II. WHETHER THE CHANCELLOR ERRED BY GRANTING SALLY A DIVORCE BASED ON HABITUAL CRUEL AND INHUMAN TREATMENT.
¶ 16. David argues that insufficient proof was shown for the chancellor to grant a divorce based on habitual cruel and inhuman treatment.
¶ 17. In order for a divorce to be properly granted on the ground of habitual cruel and inhuman treatment, the following must be proven by a preponderance of the evidence:

*739 [c]onduct that either (1) endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or (2) is so unnatural and infamous as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance.
Jackson v. Jackson, 922 So.2d 53, 56(¶ 4) (Miss.Ct.App.2006) (quoting Peters v. Peters, 906 So.2d 64, 68(¶ 13) (Miss.Ct.App. 2004)). "As a general rule, the habitual cruel and inhuman treatment must be shown to be routine and continuous; however, a single occurrence may be grounds for a divorce on this ground." Boutwell v. Boutwell, 829 So.2d 1216, 1220(¶ 14) (Miss. 2002). In reviewing a divorce decree, this Court must view the facts in the light most favorable to the appellee and will not disturb the chancellor's finding unless we find the chancellor's decision to be manifestly wrong or not supported by substantial evidence. Id. at 1220(¶ 13). It is the duty of the chancellor as the trier of fact to evaluate the sufficiency of the proof based on the credibility of the witnesses and the weight of their testimonies. Id. at (¶ 14) (citing Richard v. Richard, 711 So.2d 884, 888(¶ 13) (Miss.1998)).
¶ 18. Sally testified that from the date of their marriage, she and David never lived together or attempted to establish a marital home. She returned to her home in Gautier, Mississippi, and he returned to his home in Orange Beach, Alabama. According to Sally, she was expecting to make a home with David. She testified that David had likewise indicated a desire to establish a marital home with her. However, on each of the occasions when Sally anticipated moving to Orange Beach to live with David and establish a marital home, there was always something on David's end which prevented her moving.
¶ 19. Sally also testified that on the one or two weekends that she visited David, he received calls from females inviting him out. Notwithstanding her presence there, David declined to inform his female admirers that he was in fact married and needed to act accordingly. Instead, David chose to merely imply that he was unavailable because his son was there with him.
¶ 20. David's conduct in apparently refusing to establish a marital home with Sally started on their wedding day, continued unabated, and had a negative impact on Sally's health. This course of conduct was intentional, and apparently, it was designed to preclude the true establishment of a marital relationship. David's conduct was so unnatural as to render Sally's discharge of her marital duties impossible and, thus, destroyed any basis for the establishment of a marriage. The health impact of David's conduct upon Sally was testified to by Garrison.
¶ 21. The chancellor heard and weighed the evidence, all of which supported the allegations of Sally. Thus, his factual findings are supported by the evidence and are binding upon this Court. See Stribling v. Stribling, 906 So.2d 863, 868(17) (Miss.Ct. App.2005) (citing Hensarling v. Hensarling, 824 So.2d 583, 586(7) (Miss.2002)). While this Court reviews questions of law de novo, the course of intentional conduct attributed to David was tantamount to cruel and inhuman treatment, and it provided a basis upon which the chancellor could grant Sally a divorce.
¶ 22. This issue is without merit.

III. WHETHER THE CHANCELLOR ERRED BY FAILING TO GRANT DAVID A CONTINUANCE.
¶ 23. The grant or denial of a motion for continuance is left to the sound discretion of the trial court and will not be *740 reversed on appeal absent an abuse of that discretion. New v. Comola, 881 So.2d 369, 373(13) (Miss.Ct.App.2004).
¶ 24. On the morning of trial, David's attorney asked the court for a continuance, stating that her client had indicated an inability to be present in court because it was necessary to take a family member to the hospital. The attorney stated that David had been informed that he needed to provide the trial court with some verification of this claim, which he was to fax to her office. The trial court provided David's attorney with the court's fax number to expedite receipt of the verification. No verification was ever received, and the trial court denied the motion for a continuance. Under these facts, we cannot say that the trial court abused its discretion.

IV. WHETHER THE CHANCELLOR SHOULD HAVE ORDERED A DNA TEST TO PROVE THE PATERNITY OF STORMY LANGLEY.
¶ 25. On June 21, 2005, David filed a motion for leave of court to file a counter-complaint for divorce, paternity, and child custody. In this motion, David requested that the chancellor establish paternity of Sally's unborn child, which was due to be born in July, and if he was determined to be the biological father of the child, he requested custody and child support. In the judgment of divorce, the chancellor found that Stormy was not David's child.
¶ 26. Mississippi Code Annotated section 93-9-21(2) (Rev.2004) states: "The court, on its own motion or on motion of the plaintiff or the defendant, shall order the mother, the alleged father and the child or children to submit to genetic tests and any other tests which reasonably prove or disprove the probability of paternity." Thus, had it been alleged that David was the biological father of the child, he would have had the right to a paternity determination. However, because the parties agreed in their respective pleadings that David was not Stormy's father, he had no entitlement to a paternity test. This issue is without merit.

CONCLUSION
¶ 27. Having found no merit in any of David's issues, the chancellor's judgment is affirmed.
¶ 28. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
MYERS, P.J., BARNES AND CARLTON, JJ., CONCUR. LEE, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, GRIFFIS AND ROBERTS, JJ. ISHEE AND MAXWELL, JJ., NOT PARTICIPATING.
LEE, P.J., Concurring in Part, Dissenting in Part.
¶ 29. With respect for the majority, I must dissent as to Issue IIwhether the chancellor erred in granting a divorce based on habitual cruel and inhuman treatment. I concur as to the remaining issues. The majority finds that sufficient proof was presented by the testimony of Sally and Garrison to support a divorce on this ground. As I find that the testimony was insufficient to prove habitual cruel and inhuman treatment, I would reverse and render the chancellor's decision to grant the divorce based on this ground.
¶ 30. For a divorce to be granted on the ground of habitual cruel and inhuman treatment, "[t]here must be proof of systematic and continuous behavior on the part of the offending spouse which goes beyond mere incompatibility." Morris v. *741 Morris, 804 So.2d 1025, 1027(¶ 8) (Miss. 2002) (quoting Parker v. Parker, 519 So.2d 1232, 1234 (Miss.1988)). In certain cases, "a single occurrence may be grounds for a divorce on this ground," Boutwell v. Boutwell, 829 So.2d 1216, 1220(¶ 14) (Miss. 2002), but this is not such a case as there was no allegation of a single act that was particularly offensive. It seems nearly impossible in this case to find "systematic and continuous behavior" when the marriage, not including the separation, lasted for less than two months, and the couple did not even live together during those two months. At the most, the couple only spent a few weekends together. Sally's allegations against David were that he would come home late, pass out, or urinate on the bed or floor because he was intoxicated. She also testified that girls would call on the phone wanting him to meet them at bars. Sally's testimony regarding these complaints was as follows:
Q. So in your complaint for divorce, you alleged that you were entitled to a divorce on the grounds of habitual cruel and inhumane [sic] treatment and/or habitual drunkenness. Can you tell [t]he Court what behavior that your husbandwhat conduct that occurred during the marriage that you are basing that allegation on?
A. The coming home late at night or coming home the next day intoxicated. Coming home, passing out, urinating on the bed or in the floor. Several girls calling him all of the time in my presence asking him to meet them at a bar. It was constant.
Q. How long did you and he live together?
A. We have not lived together any since the date we were married, never.

Q: Did you live together before you were married?
A. A year. About a year prior to our marriage, we had lived together.
THE COURT: Y'all didn't separate after the date of the marriage?
MS. PACE: Well, when we got married, I still lived in Gautier and he was living in Orange Beach and we got married [at] the courthouse in Mobile. And that night, I came back home to Gautier and he still resided in Orange Beach. And we never lived together from that day of marriage.

(Emphasis added). Finally, she complained that David would not move her to Alabama after they got married. While these actions were unacceptable and certainly harmful to the marriage, I cannot find that these few allegations amount to habitual cruel and inhuman treatment.
¶ 31. I would further find that Sally failed to provide sufficient corroboration even if her testimony was sufficient to prove habitual cruel and inhuman treatment. The law is that once the spouse requesting a divorce on the basis of habitual cruel and inhuman treatment testifies as to the offending spouse's behavior, then his or her testimony must be corroborated to provide a sufficient basis for relief. Heatherly v. Heatherly, 914 So.2d 754, 757(¶ 12) (Miss.Ct.App.2005).
¶ 32. Garrison, Sally's witness, testified that she had known Sally since 2000 and thought of her as an adopted daughter. Garrison knew David but only though Sally. She did not have much contact with David. She testified that her observation of Sally and David's marriage was "a lot of turmoil" and "a bad drinking problem" on behalf of David. However, she testified that she did not personally see David drinking during the couple's marriage. According to Garrison's personal observations of David between April and June 2002, David flirted with other women and acted like he was single. It was her belief that most people did not know he was married to Sally. She testified that Sally was very excited when she married David *742 and wanted to move to Alabama to be with him. However, David would make excuses and his plans to move her never materialized. She observed that Sally became very upset over David's actions and saw her physician complaining of anxiety and depression. Garrison admitted that Sally had these feelings before she married David. Sally's attorney attempted to call another witness, Gunter Bosarge, but the chancellor interrupted, saying, "I don't need to hear from him. I think you've proved your case." Regardless, even if all of Sally's allegations are corroborated by the witness who was not allowed to testify, a divorce based on habitual cruel and inhuman treatment is still not warranted.
¶ 33. I agree with the chancellor that this couple should be granted a divorce. However, the supreme court has repeatedly held:
Divorce is a creature of statute; it is not a gift to be bestowed by the chancellor based upon a perception that declining to grant the divorce will not restore the couple to a harmonious relationship. It is a statutory act and the statutes must be strictly followed as they are in derogation of the common law.
Massingill v. Massingill, 594 So.2d 1173, 1178 (Miss.1992) (quoting Kergosien v. Kergosien, 471 So.2d 1206, 1210 (Miss. 1985)). It is apparent that the chancellor made a hasty decision in granting this divorce, even to the point of cutting off one witness's testimony before it started. While a divorce may have been warranted on a different ground, such as desertion, had it been properly pleaded, it was not warranted on the ground of habitual cruel and inhuman treatment.
IRVING, GRIFFIS AND ROBERTS, JJ., JOIN THIS SEPARATE OPINION.
NOTES
[1] Despite Sally's contention that David's address was unknown, a street address was listed in the complaint that Sally purported to be David's last known address. Also, Sally maintained contact with Cruise, who was with David at the time, and David was able to be located when he was ordered to return Cruise to Sally. Further, Sally called David at his place of work during the delay in the divorce hearing, and David answered.