KING, C.J.,
for the Court.
¶ 1. While the genesis of this appeal is the sale of an allegedly defective manufactured home, its resolution requires an examination of our law regarding judgments by default. Flagstar Bank, FSB, (Flags-tar) is the last of two defendants in a suit filed by the Danos family who purchased a manufactured home only to discover after the sale that the structure had preexisting water damage, which they claim led to mold growth that harmed them. Flagstar is a Michigan-based banking and mortgage lending corporation that held the Danoses’ mortgage for a short period. Flagstar is alleged by the Danoses to be vicariously liable because its alleged agent, an employee of a Lamar County mortgage company, submitted false and erroneous information to his employer and to Allstate Property and Casualty Insurance Company (Allstate). The Danoses claim that without the erroneous information being given to these parties, their loan would never have closed due to the inability of the property to qualify either for a loan or for insurance.
¶ 2. The trial judge entered a $500,000 judgment by default against Flagstar and against Michael H. Burks, the seller of the trailer home property, after he determined that neither party had ever appeared nor answered the complaint. Twelve days after the default judgment was entered, an attorney filed an appearance as counsel for Flagstar and timely filed a motion to set aside the default judgment. The motion claimed that the Danoses’ service of process on Flagstar was defective; therefore, the default judgment based upon improper service was void thereby giving Flagstar good cause to have the default judgment set aside. Further, Flagstar argued that it had a colorable defense to the merits of the Danoses’ claim in that their allegations against Flagstar rested solely upon vicarious liability through the actions of a defendant who was not Flagstar’s employee and more importantly had been dismissed from the lawsuit. There was no direct allegation against Flagstar in the complaint.
¶ 3. The trial court denied the motion, and this appeal ensued. Flagstar raises three issues on appeal, which we quote verbatim:
I. Did the trial court err when it entered a default judgment against Flagstar Bank, FSB for not appearing at docket call or trial when no notice of trial setting was sent by the Circuit Clerk to Flagstar, and even though the plaintiffs had not sought entry of judgment by default?
II. Did the trial court abuse its discretion when it refused to set aside the default judgment and judgment against Flagstar Bank, FSB, and did it abuse its discretion in not considering the three factors for setting aside a default judgment?
III. Did the trial court abuse its discretion in not setting aside the $500,000.00 damages award against Flagstar Bank, FSB or not apportioning damages as to Flagstar?
¶ 4. Finding error, we reverse the decision of the trial court and render as to the judgment against Flagstar.
FACTS
¶ 5. In March 2001, Calvin J. Danos and his wife, Jamie A. Danos, began the pro *351 cess to purchase from Burks a manufactured home and about eight acres of land located at 828 Pine Grove Road in Picayune, Mississippi. They used Angela Miller of Coldwell Banker Country Properties (Coldwell Banker) in Picayune as their real estate agent. In an effort to obtain financing, the Danoses contacted Chris Shirley, a mortgage broker with Amerigo Mortgage, Inc., (Amerigo) in Gulfport, who began the process of obtaining financing by getting an appraisal and insurance on the property. After the appraisal was done, the Da-noses contacted Country Living Insurance, Inc., (Country Living) in Poplarville, which issued a homeowners’ policy to them through Allstate.
¶ 6. The Danoses closed on the manufactured home and acreage on May 9, 2001, for a price of $65,000 and began occupying the property the first week of June 2001. Amerigo made the original loan and then shortly thereafter sold it to Flagstar pursuant to an agreement between Flagstar and Amerigo for Flagstar to purchase certain mortgages originated by Amerigo. Flagstar then apparently sold the mortgage to Chase Manhattan Mortgage, Inc., (Chase Manhattan) on November 16, 2001. In early June 2001, heavy rains associated with Hurricane Allison caused the Danos-es’ roof to leak. They investigated and found that the roof of the trailer had no ridge cap on the center of the roof and that visqueen which had been put on the roof was directing water down into the walls of the mobile home. As they attempted repairs, they found more and more rotted wood under the paneling. Odors from the rotting wood became apparent, and in September 2001, the family started experiencing respiratory problems. Because the conditions continued, the Da-noses hired an inspector who determined that the mobile home suffered from mildew and mold. To alleviate their health problems, the family moved into a nearby workshop on the property that was not insulated and had insufficient lighting. Calvin testified that the time they spent in the workshop damaged the family relationship due to the living conditions. Also, Jamie testified that the family suffered allergic reactions which caused them to incur $1,500 in medical bills. The Danoses filed a claim with Allstate for the damage, which Allstate denied under the “wear and tear deterioration; molds” provision of the homeowners policy.
¶ 7. On March 22, 2004, Calvin and Jamie, individually and as guardians and next friends of their children, Laura Math-erne, Gavin Danos, and Marissa Danos, all minors, filed suit in the Circuit Court of Lamar County against several defendants. Originally the defendants were Allstate, which wrote a policy of insurance on the trailer home; Coldwell Banker, a Picayune, Mississippi real estate company and Miller, a real estate broker employed by Coldwell Banker in Picayune; Country Living, an insurance agency located in Poplarville, which procured the Allstate policy for the Danoses; Amerigo, a mortgage brokering agency in Lamar County, and Shirley, an employee of Amerigo based in Pass Christian, Mississippi; Burks, a resident of Picayune, who sold the mobile home to the Danoses that is the subject of the litigation; and Flagstar, a lending institution incorporated in the state of Michigan, which held the mortgage on the property and mobile home for a short while. Venue was placed by the plaintiff in Lamar County as it is the principal place of business of Amerigo, even though the property involved and all other plaintiffs and defendants were either nonresident corporations or residents of Pearl River County.
¶ 8. Four of the defendants answered the complaint — Allstate; County Living; real estate broker Coldwell Banker and its *352 employee, Miller; and Amerigo, the mortgage broker/lender and its employee, Shirley. The same defendants who answered the complaint also engaged in discovery with the plaintiff for about two years.
¶ 9. Each of these four defendants were dismissed from the suit. The first to go were defendants Miller and Coldwell Banker, having been dismissed from the action on June 7, 2005, as result of a settlement. Defendant Country Living was dismissed from the action pursuant to an agreement of the parties filed on December 6, 2005. Defendants Amerigo and its employee, Shirley, were granted summary judgment on September 12, 2006, with the Danoses agreeing that they “have no grounds to oppose the motion.” The Danoses claimed that Allstate was negligent for not properly inspecting the property before issuing the insurance policy. Allstate moved for summary judgment, which was granted on September 13, 2006. The court found that there was no contractual provision requiring Allstate to inspect the home on behalf of the plaintiffs, nor did the company have a duty to advise them of the home’s condition. Allstate admitted that it did not conduct a thorough inspection of the premises before issuing the policy. However, the court said that any inspection Allstate would have made would have been for the benefit of Allstate and not for the Danoses. The Danoses admitted that they had not conducted a thorough inspection of the premises before they bought it. Also, the court found that the alleged negligent act, Allstate’s failure to inspect the property before issuing the policy, was outside the circle of foreseeability necessary to sustain a tort action. “While obtaining insurance was a prerequisite to obtaining financing, there is no evidence that the plaintiff would not have consummated the purchase with another insurer, or sought alternative financing,” the trial court said.
¶ 10. Only Burks, who sold the trailer to the Danoses, and Flagstar remained as defendants. Burks was personally served with process on April 15, 2004, by a process server. Burks never answered the complaint nor took part in discovery. On September 11, 2006, the Danoses filed an application for entry of a default judgment against Burks for his failure to plead or answer. Attached to the application was the affidavit of Catherine J. Jacobs, the attorney for the Danoses, who stated that Burks was duly served with a copy of the summons and complaint on April 15, 2004, and that more than thirty days had elapsed since Burks was served; Burks had failed to answer or otherwise defend the action; and the plaintiffs, therefore, were entitled to an entry of judgment by default against Burks. The clerk’s entry of default was entered against Burks on the same day, September 11, 2006. A default judgment was entered against Burks by the trial court in the same judgment as against Flagstar.
¶ 11. Flagstar also did not file an answer. Flagstar was a nonresident corporation with no registered agent in the state. The Danoses attempted service by certified mail with restricted delivery to Albert Gladner the registered agent for Flagstar, at a post office box in Troy, Michigan. The restricted delivery was signed for, returned, and filed with the Lamar County Circuit Court on July 13, 2004. The signature on the return receipt is illegible. Attached to a subsequent pleading was a letter from Robert K. Fleming, the operations coordinator for Flagstar’s legal department in Troy, Michigan. The letter was addressed to Jacobs, counsel for the Danoses, at her Ocean Springs, Mississippi address. The letter read as follows: “Flagstar Bank, FSB (Flagstar) is in receipt of the summons regarding the above referenced matter. *353 The loan account was sold on November 16, 2001 to Chase Manhattan. You may contact them at the following address and phone number listed below.” An address for Chase Manhattan Mortgage, Inc., followed. The plaintiffs never filed an application for entry of default judgment against Flagstar for failing to answer the complaint; thus, there was no clerk’s entry of default judgment against Flagstar. However, on September 21, 2006, the trial judge entered a default judgment against Flagstar. The judgment read as follows:

DEFAULT JUDGMENT

THIS CAUSE having come before the Court for trial on the merits, and the clerk having called the docket, and on three different occasions called the Defendant, Flagstar Bank FSB, and said Defendant failed to answer or appear, it is therefore
ORDERED and ADJUDGED that Default Judgment be and is hereby entered against the Defendant, Flagstar Bank FSB and in favor of the Plaintiffs pursuant to Rule 55(b) of the Mississippi Rules of Civil Procedure. It is further
ORDERED and ADJUDGED that the hearing on damages be and is hereby set over to September 29, 2006 at 11:00 A.M. at the Lamar County Courthouse in Purvis, Mississippi.
SO ORDERED and ADJUDGED this the 21 day of September, 2006.
The order was then signed by the trial judge and filed on September 25, 2006. The hearing on damages was held on September 29, 2006, with Calvin and Jamie testifying and various documents introduced. Neither Flagstar nor Burks was present or had counsel present. After the hearing, the trial judge entered a judgment that same day in the amount of $500,000 against Flagstar and Burks, jointly and severally.
¶ 12. On October 11, 2006, attorney Christopher P. Palmer of Brandon filed a notice of entry of appearance as counsel for Flagstar, and on November 15, 2006, Palmer filed a motion to set aside the default judgment and for additional relief. Flagstar claimed that the Danoses’ service on it as a nonresident corporation with no Mississippi registered agent was flawed; thus, good cause existed to set aside the judgment. Flagstar argued that the Da-noses attempted service on Flagstar by mailing a certified letter, restricted delivery requested, to Gladner, the registered agent for Flagstar at a post office box in Troy, Michigan. The chief legal counsel for Flagstar submitted an affidavit stating that the registered agent for service of process upon Flagstar was Gladner. Flagstar’s attorney swore that the return receipt attached to the summons did not bear the signature of Gladner, but instead it was signed by Romeo Pena, a mail clerk whose job it was to deliver the mail and who was not an authorized agent for service of process. Flagstar’s attorney stated that he was familiar with Pena’s signature. Flagstar’s attorney said that the return receipt was marked “Restricted Delivery” for Gladner, and Pena had no authority to sign the receipt on Gladner’s behalf. Flagstar said that because there was not a valid service of process upon it, the judgment of the Lamar County Circuit Court was void. Further, Flagstar argued that the Danoses did not follow the procedures of Rule 55 in obtaining its default judgment. Flagstar said that pursuant to Rule 55(a) of the Mississippi Rules of Civil Procedure, a plaintiff must apply to the clerk for an entry of default and support that application by affidavit or otherwise. Because there was no application for the default judgment, there also was no entry of default made by the clerk of court as required by Rule 55(a). Thus, Flagstar *354 argued that the trial court’s entry of default was faulty because it did not follow the mandatory requirements of Rule 55. Further, Flagstar argued that the default judgment should be set aside because it had a colorable defense to the merits of the Danoses’ complaint. Flagstar is mentioned in the complaint only twice, once in a paragraph stating who the registered agent is for process and another in three paragraphs that attempt to set out the Danoses’ allegations against Flagstar. Those three paragraphs read as follows:
45. At all times, hereto, the defendant Angela Miller was acting as agent and employee of defendant Coldwell Banker as well as the seller, Michael Burks. Defendant Chris Shirley, at all material times hereto, was acting as agent and employee of Amerigo Mortgage and Flagstar Bank FSB. While acting as agents for Coldwell Banker, Amerigo Mortgage and Flagstar Bank FSB, defendants Miller and Shirley submitted false and erroneous information to their principals, as well as Allstate Property and Casualty.
46. But for the submission of said false and material information, this real estate transaction would not have closed due to the inability of the property to qualify either for a loan or for insurance.
47. As a result of said misrepresentations, whether intentional or erroneous, the plaintiffs have been caused to suffer property damage as well as personal harm, as is more fully set forth hereinafter.
1Í13. Flagstar argued that there were no allegations against it other than those founded upon vicarious liability — a claim that Flagstar’s culpability rests on the actions of defendant Shirley. Because defendant Shirley had been dismissed from the action on summary judgment in September 2006, Flagstar argued that the doctrine of res judicata required that the default judgment be set aside. Flagstar said that the essence of summary judgment is that .no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Flagstar asserted the grant of summary judgment to Shirley found that Shirley had committed no act that would render him liable to the plaintiffs. Therefore, since Flagstar’s alleged liability rests upon Shirley’s liability, Flagstar could not be held liable to the Danoses as a matter of law. Further, Flagstar pointed out that there was no agency or employment relationship among Amerigo, Shirley, or any of the other defendants and Flagstar. Finally, Flagstar argued that the Danoses would suffer no prejudice if the default judgment were set aside.
¶ 14. The trial court denied the motion to set aside and in a memorandum opinion explained that the court entered the default judgment because “the defendant failed to appear for a trial on the merits, and that on three different docket calls, the defendant had failed to appear, or make any announcements. After entry of the judgment, and consistent with M.R.C.P. 55, this Court held a hearing on damages, where the defendant also failed to appear.” The court made a scant finding regarding Flagstar’s claim of lack of jurisdiction because of inadequate service of process, saying only that: “While the defendant raises numerous other issues relating to service and prejudice, this Court deems them to be without merit.” The trial court denied Flagstar’s argument that the record is void as to any entry of default, ruling that neither an application for default nor a clerk’s entry of fault is required. The court said, “M.R.C.P. 55(b) expressly allows for a default to be taken if a party fails to appear at the trial. Here, the record reflects, that the defendant *355 failed to appear at three docket calls, trial and at writ of inquiry on damages.” The trial court rejected Flagstar’s contention that default judgments are not favored and should be set aside when certain factors are shown. The trial court’s order stated: “[T]his Court does not adopt the position advocated by the defendant in regards to liberally setting aside default judgments. Setting aside defaults as envisioned by the plaintiff [sic] would become merely a perfunctory request. Moreover, failure to uphold default judgments would not foster the important judicial policy of finality of judgment.” The trial court did not address the issue of whether Flagstar had a colorable defense to the action. It is from this order that Flagstar appeals.
ANALYSIS
¶ 15. We find Issue I raised by Flags-tar dispositive; therefore, we will limit our analysis only to that issue.
¶ 16. “Default judgments are not favored, and trial judges have traditionally been lenient when it comes to relieving a party of the burden of a default judgment.” King v. Sigrest, 641 So.2d 1158, 1161 (Miss.1994) (quoting Bell v. City of Bay St. Louis, 467 So.2d 657, 661 (Miss.1985)). Conflicting principles are at play when a trial court is faced with a default judgment. On the one hand the default judgment promotes efficient administration of justice by requiring a responding party to follow the requirements of Rule 55 of the Mississippi Rules of Civil Procedure. The default judgment provides a means to deal with a party against whom affirmative relief is sought who does nothing or very little to respond to the complaint. On the other hand, however, there is a strong desire to decide cases on the merits rather than on procedural violations. Manning v. Lovett, 228 Miss. 191, 195, 87 So.2d 494, 496 (1956). For this reason, most courts, including our supreme court, disfavor the entry of a default judgment. This is a reflection of the often stated preference for resolving disputes on the merits. “Default is not favored as a way to settle lawsuits. It is the policy of our system of judicial administration to favor disposition of cases on their merits.” Wheat v. Bakin, 491 So.2d 528, 526 (Miss.1986) (citing Bell, 467 So.2d at 661).
¶ 17. Whether to set aside a default judgment is committed to the sound discretion of the trial court. Lexington Ins. Co. v. Buckley, 925 So.2d 859, 864(¶ 21) (Miss.Ct.App.2005). However, “this has never meant that the trial judge could do anything he or she wished.” King, 641 So.2d at 1162 (quoting Bell, 467 So.2d at 661). “Sound discretion imports a decision by reference to legally valid standards [and] [w]here a trial judge in determining a matter committed to his sound discretion makes his decision by reference to an erroneous view of the law, this Court has authority to take appropriate corrective action on appeal.” Id.
¶ 18. A party seeking to set aside a default judgment turns to Rule 55(c) of the Mississippi Rules of Civil Procedure which states: “For good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).” Rule 60(b) provides for relief from judgments for various reasons such as mistakes, fraud, and newly discovered evidence. M.R.C.P. 60(b).
¶ 19. With the law concerning default judgments set out we turn to the pivotal issue of whether the trial court had jurisdiction over Flagstar to enter a judgment against it.

Whether the Service of Process on Flagstar Was Effective

¶20. A salient requirement of issuing a judgment by default is that the *356 court must have jurisdiction over the party against whom the default judgment is to be taken. As the comment to the Rule 55 states: “Before a default [judgment] can be entered, the court must have jurisdiction over the party against whom the judgment is sought, which also means that he must have been effectively served with process. Arnold v. Miller, 26 Miss. 152 (1853).” M.R.C.P. Rule 55 cmt. Succinctly stated, a court must have jurisdiction obtained by proper service of process in order to enter a default judgment against a party. McCain v. Dauzat, 791 So.2d 839, 842(¶ 7) (Miss.2001) (citing Arnold, 26 Miss, at 155). “Otherwise, the default judgment is void.” Id. If a default judgment is void, then the trial court has no discretion and must set the judgment aside. Sartain v. White, 588 So.2d 204, 211 (Miss.1991).
¶ 21. Flagstar was a nonresident corporation not doing business in Mississippi. The Danoses attempted service of process by summons issued pursuant to Rule 4(d)(4) of the Mississippi Rules of Civil Procedure by delivering a copy of the summons and complaint to “an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.” Then the Danoses had Flagstar served pursuant to Rule 4(c)(5) by sending a copy of the summons and the complaint to the person to be served by certified mail, return receipt requested. This subsection of the civil procedure rule further states that service “shall be deemed complete as of the date of delivery as evidenced by the return receipt or by the returned envelope marked ‘Refused.’ ” M.R.C.P. 4(c)(5).
If 22. The basis of Flagstar’s argument that the default judgment against it should be set aside is that it was not properly served because the person receiving process by mail, signing the return receipt, and mailing it back to the circuit court was a mail clerk and not “an officer, a managing or general agent, or other agent authorized by appointment or by law to receive service of process” pursuant to Rule 4(d)(4). In support of its argument, Flags-tar submitted the affidavit of its chief legal officer saying that he was familiar with the signature of the mail clerk who signed the return receipt and that it was the mail clerk’s signature on the return receipt, not the signature of the registered agent. Matthew Roslin, in his affidavit dated October 31, 2006, stated that he was the chief legal officer for Flagstar and that in April 2004 Flagstar’s registered agent for service of process was Gladner. The affidavit states that the return receipt attached to the summons for Flagstar did not bear the signature of the addressee, Gladner. Instead Roslin said that the signature was that of Romeo Pena, a mail clerk at Flags-tar, with whose signature Roslin said he was familiar. Roslin said that Pena’s job responsibilities were to deliver mail from the mail distribution center to the recipients. Roslin said that Pena was not authorized to accept service of process for Flagstar, nor was he an agent for Gladner. “The Return Receipt is marked ‘Restricted Delivery5 for Mr. Gladner and Romeo Pena had no authority to sign the Return Receipt on Albert Gladner’s behalf,” the affidavit concluded.
¶ 23. The Lamar County Circuit Clerk could not read the signature on the return as is noted by a July 13, 2004, docket entry that reads: “Summons returned-certified mail as to Flagstar Bank signed for 4-15-04 by ?, filed.” As noted in the entry there was a question mark where the clerk places the name of the person returning service.
¶ 24. In the face of this denial of proper service, the Danoses offered no counter-affidavits or other proof regarding the sig *357 nature of the registered agent or as to its authenticity. Instead, the Danoses filed a “Response to Motion to Set Aside Judgment” and a “Motion to Strike the Affidavit.” The Danoses, however, never brought the motion to strike on for hearing as there is no order in the record ruling on the motion. In the motion to set aside judgment, the Danoses said that the signature on the return receipt was “largely illegible and resembled the initials ‘A.G.’ ” The only other reference in the motion was that Flagstar sent a letter dated April 26, 2004, to counsel for the plaintiff advising her that Flagstar had sold the Danoses’ loan account to Chase Manhattan on November 16, 2001.
¶ 25. Mississippi Rule of Civil Procedure 4(c)(5), which allows out of state service of summons by certified mail, and Rule 4(d)(4), which identifies the person upon whom service must be made if the defendant is a foreign corporation, must be read jointly. Brown v. Bristol-Myers Squibb Co., 2002 WL 34213425 at *3, 2002 U.S. Dist. LEXIS 27445 at *8-12 (S.D.Miss.2002).[1] If service is attempted by certified mail upon a corporation under Rule 4(c)(5), but is delivered to a person not designated to receive process under Rule 4(d)(4), then the process fails. Id. In Rogers v. Hartford Life and Accident Insurance Co., 167 F.3d 933, 940 (5th Cir.1999), the federal appeals court considered the interrelationship between Rule 4(c)(5) and Rule 4(d). The court said:
We begin by examining the plain language of Rule 4(c)(5). See Russell v. State, 231 Miss. 176, [189], 94 So.2d 916, 921 [1957] (noting that “the meaning of statutes is to be sought and ascertained from their language.”) [superceded by statute on other grounds]. The first sentence of the Rule states that “a summons may be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested.” [M.R.C.P.] 4(c)(5) (emphasis added). The Rule then states that “[w]here the defendant is a natural person, the envelope containing the summons and complaint shall be marked ‘restricted delivery.’ ” [M.R.C.P.] 4(c)(5) (emphasis added). The Rule, therefore, distinguishes between the “person” that physically receives service, and the actual “defendant.” The two terms are not synonymous.
Rogers, 167 F.3d at 940. Thus, a plaintiff, when faced with which procedural rule to follow in serving process pursuant to Rule 4(d), must specifically identify whether the defendant is a “person” and apply the attendant civil procedure rule and/or identify who is the “the actual defendant” and follow the appropriate civil procedure rule. In this case, the Danoses determined that one of the defendants was Flagstar, a foreign corporation not doing business in Mississippi with no registered agent for service of process. Because Flagstar, the actual defendant, was a corporation then the civil procedure rule for serving an out-of-state corporation, Mississippi Rule of Civil Procedure 4(d)(4),[2] was to be fol *358 lowed. The Danoses attempted to follow Rule 4(d)(4) but failed because the authorized agent for service of process was not served. Instead the uncontested evidence shows that service was had upon a mail clerk. We have affirmed the salient rule that procedural rules relating to service of process are to be strictly construed. Kolikas v. Kolikas, 821 So.2d 874, 878(¶16) (Miss.Ct.App.2002) (citing Birindelli v. Egelston, 404 So.2d 322, 323-24 (Miss.1981)).
¶ 26. If service is attempted upon an agent, this entails an affirmative showing by the plaintiff that the person served was in fact the agent for service of process before a default judgment is entered. Hanover Modular Homes of Taft, Inc. v. Corpus Christi Bank & Trust, 476 S.W.2d 97, 99 (Tex.Civ.App.1972). Just because an individual is an employee of a defendant “does not cloak that individual with authority to receive process for the defendant,” and the burden of proof is upon the plaintiff to establish that the authority to receive service of process exists between the defendant and the individual served. Brakke v. Rudnick, 409 N.W.2d 326, 330 (N.D.1987); Hanover Modular Homes, 476 S.W.2d at 99, 101. When the return of service in situations other than by personal service is challenged by an affidavit and there are no counter-affidavits, the return itself is not even evidence and, absent evidence from the plaintiff, the affidavit must be taken as true and the purported service of summons quashed. Sullivan v. Bach, 100 Ill.App.3d 1135, 56 Ill.Dec. 450, 427 N.E.2d 645, 649 (1981) (citing First Fed. Sav. & Loan Ass’n of Chicago v. Brown, 74 Ill.App.3d 901, 30 Ill.Dec. 538, 393 N.E.2d 574, 578 (1979)).
¶ 27. Applying these general rules to the facts of our case, we find that the Danoses did not make an affirmative showing that the person who signed for the summons was in fact the registered agent for service of process for Flagstar. While Flagstar submitted an affidavit that the person who signed was a mail clerk and not the agent for service of process, the Danoses only said in a pleading that the signature on the return receipt “resembled the initials ‘A.G.’ ” The Danoses point to the fact that their attorney received a letter dated April 22, 2004, from Fleming, with the legal department at Flagstar advising her that Flagstar was in receipt of the summons regarding the matter, but that the loan account was sold to another bank on November 16, 2001. However, the Mississippi Supreme Court has long held that “actual knowledge by a defendant of the pendency of a suit against him is immaterial, ‘unless there has been a legal summons or a legal appearance.’ ” Brown v. Riley, 580 So.2d 1234, 1237 (Miss.1991) (quoting McCoy v. Watson, 154 Miss. 307, 315, 122 So. 368, 370 (1929)). Thus, the Danoses may not use the letter as a substitute to a legal summons upon Flagstar.
¶ 28. The Danoses, as plaintiffs, had the burden to establish that the authority to receive service of process existed between Flagstar and the individual who was served. By affidavit, the attorney for Flagstar stated that the person who signed for the process was a mailroom clerk who was not the agent for service of process. The Danoses submitted no counter-affidavits. Therefore, the Flagstar affidavit from the Flagstar attorney Roslin must be taken as true, and the purported service of summons on Flagstar quashed.
¶29. The dissent takes the view that service upon Flagstar was complete upon the delivery of the certified mail, quoting in support of its argument the last sentence of Rule 4(c)(5), entitled “Service by Certified Mail on Person Out *359 side State” which reads: “Service by this method shall be deemed complete as of the date of delivery as evidenced by the return receipt or by the returned envelope marked ‘refused.’ ” The dissent says that the certified letter was signed for by someone whose signature could not be deciphered and summons was returned. Thus, to the dissent, service was effectuated. However, while quoting in full Rule 4(d)(4), which sets out how a foreign corporation is to be served, the dissent then makes no analysis of how serving a mail clerk can meet the requirements of that rule that service be made on a foreign corporation like Flagstar “by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.” The Danoses’ attempt to serve Flagstar failed when the mailroom clerk signed for the process and the Danoses took no further action to ensure that the person signing the return receipt was “an officer, a managing or general agent, or ... any other agent authorized by appointment or by law to receive service of process.” Even when told by Flagstar in the affidavit of Roslin that Peno, the mail clerk, had signed for the summons and that Peno was not authorized by appointment or by law to receive service of process, the Danoses did nothing. They took no steps to offer a counter-affidavit. We refuse to adopt a corporate “mailbox-type rule” where service upon a foreign corporation is complete upon delivery as evidenced by the return receipt regardless of who signs for the corporation. Process upon a corporation must be directed to one of its agents authorized by it to accept process. As the practice guide in American Jurisprudence 2d states: “Service of process on a corporation will be quashed upon the filing of an uncontradicted affidavit that the person served was not the general manager, officer, or agent of a corporation and had never been authorized to accept service of process on the corporation’s behalf.” 62B Am.Jur.2d Process, § 241 (2005).
¶ 30. Because the trial court lacked jurisdiction to issue a default judgment, we find that the judgment of the trial court must be reversed and rendered.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE AND MYERS, P.JJ., AND GRIFFIS, J.

. Federal Rule of Civil Procedure 4(e)(1) provides that serving an individual within a federal judicial district may be done by: “following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.” Therefore, federal court decisions interpreting Mississippi's civil procedure rules are persuasive.

. Rule 4(d)(4) provides in pertinent part:
"Service by sheriff or process server shall be made as follows:
(4) Upon a ...- foreign corporation ... by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.”